ATTORNEY FOR APPELLANT
Stephen J. Beardsley
New Albany, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**

Jan 09 2008, 12:06 pm

*[signature]*

**CLERK**

of the supreme court,
court of appeals and
tax court

_____

No. 10S05-0704-CR-139

JESUS ARRIETA,

*Appellant (Defendant Below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff Below).*

_____

Interlocutory Appeal from the Clark Superior Court, No. 10D02-0506-FA-383
The Honorable Cecile A. Blau, Judge
_____

On Petition To Transfer from the Indiana Court of Appeals, No. 10A05-0602-CR-92
_____

**January 9, 2008**

**Shepard, Chief Justice.**

American courts regularly supply interpreters at public expense to criminal defendants who are indigent. This appeal presents quite a different proposition: what should the court supply when the defendant is solvent?

When appellant Jesus Arrieta came before the court for his initial hearing on drug charges, the court provided an interpreter at public expense because the defendant did not speak

English. The defense subsequently requested a court-funded interpreter for all remaining proceedings. The court declined to pay for these services absent a showing of indigency. The Court of Appeals affirmed on interlocutory appeal.

We distinguish defense interpreters, who simultaneously translate English proceedings for non-English-speaking defendants, from proceedings interpreters, who translate non-English testimony for the whole court. We conclude that courts should regularly provide proceedings interpreters at public expense when they are needed, regardless of a defendant's indigency even when the defendant speaks English, as they are part of the basic apparatus of a court's operation. By contrast, we see little reason why the public should finance defense interpreters for defendants who possess financial means.

## Facts and Procedural History

Jesus Arrieta was arrested on June 9, 2005, and subsequently charged with dealing in cocaine (three grams or more), a class A felony. The next day, Arrieta made a preliminary appearance and told the court that he did not speak English. The court ordered an interpreter to be present at the initial hearing.

Arrieta posted a $50,000 bond on June 13 and said he planned to hire Stephen Beardsley as his attorney. On June 14, the State filed formal charging documents at the initial hearing, and Arrieta participated, accompanied by Mr. Beardsley. An interpreter paid by the court was also present.

The court contacted Beardsley on August 31, 2005, to advise him that Arrieta needed to provide an interpreter at his own expense for future hearings. Arrieta objected to paying, and no interpreter was present at a pre-trial hearing on September 8, 2005. This hearing was rescheduled. The court subsequently sent notice to the parties that due to "the dire financial needs of the County," the court does not provide a court-paid interpreter beyond the initial hearing unless the defendant demonstrates indigency. The court noted that Arrieta "was

provided a translator for the initial hearing where the charges were explained to [him], constitutional rights were reviewed and trial dates were set." (App. at 21.)

On October 27, 2005, Arrieta filed a "Motion to Provide Translator Services," requesting an interpreter at public expense for all future proceedings. At a hearing on the motion, the court said,

> [T]he question here is who's going to pay for the translator . . . because the Court will always respect your right and your client's right to have a translator. . . . The Court does provide translators for individuals who are indigent . . . . But that's something that needs to be brought to the Court's attention . . . .

(Id. at 10.) The court went on to say that after the initial hearing, "it's Mr. Arrieta's burden to establish that he . . . is unable to pay for a translator."[1] (Id. at 14.) Because such a showing had not been made, the court denied Arrieta's motion.

The trial court granted Arrieta's request to pursue an interlocutory appeal. The Court of Appeals accepted the appeal and affirmed, concluding that "our legislature has made a policy decision to require trial courts to provide interpreters at government expense only when the defendant is indigent." Arrieta v. State, 856 N.E.2d 1286, 1288 (Ind. Ct. App. 2006), vacated. We granted transfer.

## I. The Need for Qualified Interpreters

As the number of Indiana residents who do not speak English continues to rise, we must ensure these individuals can maneuver the system of justice. Encountering the court system is difficult enough for native English speakers. Non-English speakers struggle merely to

---

[1] At the November 16, 2005 hearing, the court said,

> [T]he Court does pay for interpreters at the initial hearings for all matters just to make sure because we don't have time to make the determination of financial abilities. But [subsequent to the initial hearing] it's up to the defendant to show and establish that they have a financial need. Just as if we appoint a public defender basically there has to be a showing of need.

(App. at 13.)

understand the words of court staff, lawyers, and judges, let alone the corresponding processes they reflect. When court arrangements to meet this need go badly, the consequences can be very adverse.[2] Providing adequate arrangements requires both decisions about when to engage interpreters and mechanisms to assure the availability of capable interpreters.

## *Building a Cadre of Competent Interpreters*

Although the necessity of interpreting court proceedings has long been with us, the need for a coordinated approach to providing qualified interpreters was highlighted by a report from our Supreme Court Commission on Race and Gender Fairness. The Commission surveyed Indiana judges, attorneys, court employees, and court users concerning issues of language and cultural barriers in the legal system. See Ind. Supreme Court Comm'n on Race and Gender Fairness, Honored to Serve: Executive Report and Recommendations 14 (Dec. 20, 2002).[3] This survey documented the many interpreter problems Indiana courts faced on a daily basis, and plainly indicated a growing need for interpreters in Indiana courts.[4]

---

[2] See, e.g., Ernesto Londoño, Md. Judge Dismisses Sex-Abuse Charges, Wash. Post, July 22, 2007, at C05 (child abuse charges dismissed on speedy trial grounds after three-year failure to find interpreter fluent in defendant's native language). The National Center for State Courts ("NCSC") reported: "Recent [2000] census figures indicate that about 10 percent of people living in the United States are foreign born. Eighteen percent – almost 45 million people – report that they speak a language other than English at home and almost 5 percent 'do not speak English well,' or 'do not speak English at all.'" Nat'l Ctr. for State Courts, Consortium for State Court Interpreter Certification: Frequently Asked Questions 4 (2006), http://www.ncsconline.org/D_Research/CourtInterp/ Res_CtInte_ ConsortCertFAQ.pdf (last visited Jan. 8, 2008) [hereinafter, NCSC, Frequently Asked Questions]. For further discussion, see Randall T. Shepard, Access to Justice for People Who Do Not Speak English, 40 Ind. L. Rev. 643 (2007).

[3] Available at http://www.in.gov/judiciary/fairness/pubs/fairness-final-report.pdf [hereinafter Race and Gender Fairness Comm'n, Executive Report].

[4] Id. at 14-15. Population data alone demonstrated the growing number of non-English speakers entering Indiana courts manned by English-speaking judges and court staff:

> The 2000 U.S. Census reported that more than 362,000 persons over age 5 in Indiana or 6.4 percent of the population spoke languages other than English in their homes and 40 percent of them reported that they speak English less than well. . . . More than 186,000 residents of Indiana over age 5 or 3.1 percent of the population were born outside the U.S. and more than half entered the country after 1990. Moreover, while the total population of Indiana was projected to increase by about 8.2 percent between 2000 and 2025, the Hispanic population is expected to increase at a rate of approximately 73.6 percent.

Id. at 14.

The Commission's survey of Indiana trial judges, conducted in 2001, revealed that 90 percent had used an interpreter in the past six months. While more than half of the state's judges had used interpreters between one and ten times during that time period, 4.9 percent had used interpreters more than a hundred times. Judges most commonly reported using Spanish interpreters (84.6 percent), followed by Vietnamese (10.1 percent), Chinese (9.7 percent), and Russian (6.1 percent). Other surveys reported use of interpreters for languages such as Polish, German, Japanese, Korean, Arabic, French, Greek, Ethiopian, Punjabi, Croatian, Serbian, Lithuanian, Macedonian, Czech, Thai, Burmese, Tongan and Rumanian.

Unsurprisingly, judges found it challenging to fulfill such needs. Thirty percent reported an inability to find an interpreter when one was needed, forcing use of alternative strategies, such as postponing hearings and allowing family members, friends, bilingual counsel, or other court personnel to interpret. Id. at app. A, at 5, 7. Even when judges were able to locate a potential interpreter, they were often unable to determine whether he or she was genuinely qualified. Id. at app. A, at 7.

Based on these findings, the Commission recommended development of a statewide court interpreter system. Indiana subsequently joined a collaborative enterprise established by the National Center for State Courts – the Court Interpreter Certification Consortium. The National Center launched this collaborative in 1995, recognizing that the cost of implementing reliable certification procedures for the many necessary languages could not be shouldered by any individual state. The Consortium's goal has been "to facilitate court interpretation test development and administration standards, to provide testing materials, to develop educational programs and standards, and to facilitate communication among the member states and entities." See State Court Admin., Court Interpreter Certification Program: About the Program, http://www.in.gov/judiciary/interpreter/about.html (last visited Jan. 8, 2008).[5]

---

[5] By May 2007, thirty-nine states belonged to the Consortium, and tests have now been developed for Arabic, Cantonese, French, Haitian-Creole, Hmong, Korean, Laotian, Mandarin, Portuguese, Russian, Serbian, Somali, Spanish, and Vietnamese. See Nat'l Ctr. for State Courts, Consortium for State Court Interpreter Certification: Tests 1 (2007), http://www.ncsconline.org/wc/publications/Res_CtInte_ConsortCertTestsPub.pdf (last visited Jan. 8, 2008); Nat'l Ctr. for State Courts, Consortium for State Court Interpreter Certification: Member States 1 (2007), http://www.ncsconline.org/D_Research/CourtInterp/Res_CtInte_ConsortMemberStatesMay07.pdf (last visited Jan. 8, 2008).

With the assistance of the Consortium, Indiana devised a program to train, test, and certify Spanish interpreters, which today recognizes fifty-two certified Spanish interpreters. We also permit certification by reciprocity to out-of-state interpreters with Federal Certification or State Certification from NCSC Interpreter Consortium member states.[6] As with interpreters elsewhere, Indiana's certified personnel are sworn to a code of conduct.[7]

The Indiana General Assembly has appropriated funds to assist courts in engaging qualified interpreters, especially in Spanish,[8] and the Supreme Court opened an account with "Language Line Services" for telephone interpretation. Language Line is an over-the-phone interpretation service based in Monterey, California, which provides interpreting of more than 140 languages, every day of the year, around the clock. Our trial courts have used Language Line interpreters to assist people who spoke French, Somalian, Russian, Mongolian, Yeman, Korean, and Mextaco (a Mexican regional dialect).

### *Interpreter Roles in Criminal Proceedings*

Interpreters serve two crucial roles in criminal proceedings. First, defense interpreters benefit the non-English-speaking defendant by simultaneously translating the English proceedings and assisting with attorney-client communications. Second, proceedings interpreters serve the court by translating the speech of participants at various junctures.

Defense Interpreters. A non-English-speaking defendant relies on his interpreter to understand the trial, to communicate with his attorney, and to communicate with the court. For

---

[6] See State Court Admin., Court Interpreter Certification Program: Certification by Reciprocity, http://www.in.gov/judiciary/interpreter/reciprocity.html (last visited Jan. 8, 2008). As a result, Indiana currently has one certified Arabic interpreter. State Court Admin., Court Interpreter Certification Program: Certified Interpreter Registry, http://www.in.gov/judiciary/interpreter/registry.html (last visited Jan. 8, 2008).

[7] The National Association of Judiciary Interpreters and Translators has devised a Code of Ethics and Professional Responsibilities. See Nat'l Ass'n of Judiciary Interpreters & Translators, Code of Ethics and Professional Responsibilities, http://www.najit.org/ethics.html (last visited Jan. 8, 2008).

[8] In 2006, we issued $139,500 in court interpreter grants, and in 2007, we issued an additional $168,250 to benefit 40 counties in an effort to help local trial courts break down language barriers. See Press Release, State Court Admin., Supreme Court Awards $168,250 in Court Interpreter Grants (June 1, 2007), available at http://www.in.gov/judiciary/press/2007/0601.html.

these defendants, interpreters are "necessary to implement fundamental notions of due process such as the right to be present at trial, the right to confront one's accusers, and the right to counsel." Martinez Chavez v. State, 534 N.E.2d 731, 737 (Ind. 1989). Without the aid of an interpreter, these rights cannot be assured to non-English-speaking defendants.

In United States ex rel. Negron v. New York, for example, the Spanish-speaking defendant on trial for murder was unable to communicate effectively with his court-appointed attorney who spoke no Spanish. 434 F.2d 386, 388 (2nd Cir. 1970). He was similarly unable to understand twelve of the fourteen State's witnesses who testified against him in English, making the trial nothing more than a "babble of voices" to the defendant. Id. Although the State hired an interpreter to translate the testimony of the Spanish-speaking witnesses for the benefit of the court, this interpreter was not equally accessible to the defendant. The interpreter never simultaneously translated the English testimony for the defendant, and as a result, he was effectively unable to participate in his own defense. Id. The court held that the defendant's right of confrontation was violated and other rights were threatened, such as the right to be present at one's trial and the right to counsel. Id. at 389-90.

Citing Negron, we held more than fifteen years ago that "[a]n indigent defendant who cannot speak or understand English has the right to have his proceedings simultaneously translated to allow for effective participation." Martinez Chavez, 534 N.E.2d at 736. We reaffirm this holding today. It is axiomatic that a non-English-speaking criminal defendant's rights cannot be preserved without the assistance of what we have termed a "defense interpreter." Our Court of Appeals has thoughtfully examined how trial courts should undertake to decide whether to appoint such interpreters:

> Whenever a trial court is put on notice that a defendant has a significant language difficulty, the court shall make a determination of whether an interpreter is needed to protect the defendant's due process rights. A trial court is put on notice of a potential language barrier when a defendant manifests a significant language difficulty or when an interpreter is specifically requested. The court's decision as to whether an interpreter is needed should be based on factors such as the defendant's understanding of spoken and written English, the complexity of the proceedings, issues, and testimony, and whether, considering those factors, the defendant will be able to participate effectively in his defense. Absent such

7

> indications, however, the court is under no obligation to inquire into the defendant's need for an interpreter.

Nur v. State, 869 N.E.2d 472, 479 (Ind. Ct. App. 2007) (footnotes omitted).

Proceedings Interpreters. Equally important, the proceedings interpreter serves judge, counsel, parties, and jury by translating to or from English during various events in a case.

A common example, illustrated in this case, is the need to interpret an initial hearing (or for that matter a bond or an indigency proceeding) for a defendant who does not speak English.

Another event requiring a proceedings interpreter is the taking of testimony. This interpreter ensures that the finder of fact hears all probative testimony, some of which might otherwise be unavailable or misconstrued.

Both parties to a criminal case need this sort of interpreting. For the prosecution, a conviction may hinge upon the testimony of a non-English-speaking witness. Conversely, the sole exonerating evidence might come from a witness who speaks a different language. Denying a criminal defendant the right to present such evidence interferes with his right to present a case.

Effective management of the various steps in a criminal proceeding may well call for surmounting language barriers that arise at other points difficult to define with precision ahead of time.

Trial Court Judgment in an Evolving Environment. The present case does not require deciding whether one interpreter can serve as both a defense interpreter and a witness interpreter in the same proceeding, or whether more than one may sometimes be necessary. We have laid out these distinct roles to alert trial courts of the need to ensure that they are both filled, to protect the rights of the parties and the integrity of the fact-finding process. To be sure, our trial courts will face various scenarios requiring solution through the exercise of sound judgment.

## II. Who Should Pay?

Separate from a criminal defendant's right to a defense or proceedings interpreter is the question of who should pay for these services. It is not in dispute that an indigent, non-English-speaking criminal defendant is entitled to interpreting at public expense. Rather, the question presented in this case is whether a solvent criminal defendant is entitled to a court-financed interpreter.

The Indiana Code does not supply an answer. Although Indiana has a statute addressing interpreter fees in civil proceedings, there is not a corresponding statute for criminal proceedings. See Ind. Code Ann. § 34-45-1-4 (West 2006) (court has discretion to set fees and determine person responsible for cost when court appoints interpreter).[9]

A majority of the Court of Appeals panel in this case held that solvent defendants are not entitled to court-funded interpreters, at least in the absence of affirmative legislation. The majority acknowledged a criminal defendant's right to an interpreter, but noted,

> [N]on-indigent defendants are not entitled to court-appointed attorneys or expert witnesses. Lamonte v. State, 839 N.E.2d 172, 176 (Ind. Ct. App. 2005). Thus, the mere fact that a right – such as the right to counsel – is fundamental does not necessarily mean that the exercise of that right must be subsidized by the government under all circumstances. Rather, it is only when the defendant is without financial ability to exercise that right that it must be provided by the government at no cost to him.

Arrieta, 856 N.E.2d at 1288.

Rejecting the majority's analogy to court-appointed attorneys, the dissent likened court interpreters to what "the Second Circuit once labeled the 'physical accoutrements' of a trial." Id. at 1289-90 (Vaidik, J., dissenting) (quoting United States v. Desist, 384 F.2d 889, 903 (2nd Cir. 1967)). The dissent went on to say:

---

[9] In 1981, the General Assembly repealed the corresponding criminal statute, Ind. Code § 35-1-8-2, which gave the court discretion to assess fees for court-appointed interpreters, though such fees could not be assessed against an acquitted defendant.

> Requiring a non-English speaking defendant to pay for an interpreter . . . would be tantamount to requiring any defendant to pay for a courtroom, a bailiff, even a judge. In that way, an interpreter is part of the "basic apparatus" for intelligible and fair proceedings. And when the government chooses to make someone a criminal defendant, it should furnish this basic apparatus.

Id. at 1290 (quoting Desist, 384 F.2d at 903).

We find both positions helpful. As we noted above, defense interpreters primarily serve non-English-speaking defendants, while proceedings interpreters serve the whole court. We agree with Judge Vaidik that proceedings interpreters are part of the "physical accoutrements" of a trial and are necessary to ensure intelligible and fair proceedings. Just as a trial cannot proceed without a judge or a bailiff, an English-speaking court cannot consider non-English testimony without an interpreter. This analogy suggests that the government should provide proceedings interpreters when necessary in criminal proceedings, whether the witness has been called by the prosecution or the defense, and we perceive this as the practice now prevailing.

In contrast, defense interpreters largely serve the defendant. For this service, we conclude the analogy to the service of counsel is appropriate. Defendants who do not speak English are entitled to the help of counsel and defense interpreters. The indigent defendant receives this help at public expense; the solvent defendant proceeds on his own. As the Second Circuit said in Desist, "We are aware that trying a defendant in a language he does not understand has a Kafka-like quality, but [a non-indigent defendant's] ability to remedy that situation dissipates substantially – perhaps completely – any feeling of unease." 384 F.2d at 902.

In this case, Arrieta seeks appointment of a court-financed defense interpreter, but does not present any evidence that he is indigent. Instead, the only evidence in the record about his financial ability is the fact that he posted a $50,000 bond and hired his own lawyer. We acknowledge that these facts alone are not determinative.[10] Yet, Arrieta had ample opportunity to present evidence contradicting his ability to pay for a defense interpreter, and he has not done so.

---

[10] "The determination of indigency must be based on a thorough examination of the defendant's 'total financial picture as is practical,' and not on 'a superficial examination of income and ownership of property.'" Lamonte, 839 N.E.2d at 176-77 (quoting Moore v. State, 273 Ind. 3, 7, 401 N.E.2d 676, 679 (1980)).

As such, Arrieta must pay for a defense interpreter to translate the English proceedings, but the court must provide a court-funded proceedings interpreter to translate any non-English testimony.

## Conclusion

We affirm the trial court's order and remand for further proceedings on the merits.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.