**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 11 2013, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CYNTHIA M. CARTER**
Law Office of Cynthia M. Carter, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARTIN REYES, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 46A03-1206-PC-261 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAPORTE CIRCUIT COURT
The Honorable Thomas J. Alevizos, Judge
Cause No. 46C01-0707-PC-378

**March 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Martin Reyes appeals the post-conviction court's denial of his request for post-conviction relief. Reyes contends that the post-conviction court erred in concluding that his trial counsel was not ineffective. Finding that Reyes did not receive ineffective assistance of trial counsel, we affirm.

**Facts and Procedural History**

The facts underlying Reyes' convictions were adopted from this Court's memorandum opinion on direct appeal:

> In 2004, Reyes and his wife, Veronica, lived next door to Silbiano Osornio (Silbiano), and his wife Adela Garcia (Adela) (collectively, the Osornios), in LaPorte County. The Osornios lived with their son, Jorge, and one of their daughters, Alma, and her three children. The Osornios' other daughter, Delia, lived nearby with her husband, Jose.
>
> On Saturday, August 28, 2004, Reyes was in bed with his wife when he saw a man peeking through their bedroom window. When Reyes rose, the man ran away. Reyes went outside and saw a tire propped against the house, which allowed the man to see in the window. He then left to run some errands.
>
> That same morning Silbiano and Jorge left around 7 a.m. for work. They returned around 11 a.m. Silbiano went in the house to sleep while Jorge and some others stayed outside to tint car windows. When Reyes returned home, after Silbiano and Jorge, he walked over to the Osornios' home and asked to speak with Silbiano. Reyes put his arm around Silbiano, walked him outside, and accused Silbiano of looking into his window that morning. Silbiano denied the accusation. Reyes told Silbiano, "just shut up you old man." Then, Reyes started pushing Silbiano commenting he would not hold up because he was an old man. At that point, Jorge stepped in and a fight ensued between Reyes and Jorge. After approximately five minutes Silbiano broke up the fight. Reyes retreated into his house, all the while yelling, "it's not over," "you're gonna pay for this," "it's not going to end like this," and "that he was going to kill him."

2

After the fight, Reyes entered and exited his house several times. At one point he drove away hitting Jorge's truck when he pulled in and out of his parking spot. Upon returning home, Reyes remained inside until his brother, Ignacio, arrived.

Later that afternoon, an argument ignited between Delia, the Osornios' daughter, and Veronica, Reyes' wife; a fight ensued. Reyes and Ignacio came outside and separated the women. Jorge ran to Delia's defense and a fight ensued between Ignacio and Jorge. As the two were fighting, Reyes drew a concealed knife and stabbed Jorge in the chest, puncturing his heart. Reyes then proceeded toward Delia when her husband, Jose, pushed him. Reyes and Jose grabbed each other. Then, Ignacio grabbed Jose from behind and Reyes stabbed Jose. After that Reyes went after Jorge's unarmed cousin, Baltazar, with the knife. Baltazar unsuccessfully tried to disarm Reyes and was stabbed in the process. Reyes next turned to Adela who had picked up a shovel. He was waiving the knife around when Silbiano came outside and took the shovel away from his wife. Reyes said, "do you want [anymore] you (sic) mother fuckers?"

Reyes fled from the yard and several people chased after him. Not far from the scene the police apprehended him. While being taken into custody, Silbiano kicked Reyes in the chin. Jorge died in the yard as a result of the stab wound. Jose was taken to the hospital and required surgery to save his life.

*Reyes v. State*, No. 46A03-0512-CR-584 (Ind. Ct. App. Oct. 24, 2006) (citations omitted). The State charged Reyes with Count I, murder; Count II, attempted murder, a Class A felony; Count III, aggravated battery, a Class B felony; and Count IV, battery with a deadly weapon resulting in serious bodily injury, a Class C felony. After a week-long trial in June 2005, a jury found Reyes guilty as charged, and he was sentenced to an aggregate sentence of seventy-five years. Reyes later appealed, challenging the admission of certain evidence at trial and his sentence. This Court affirmed Reyes' convictions and sentence. *Id.*

In 2011, Reyes sought post-conviction relief, alleging ineffective assistance of trial counsel.[1] Reyes claimed, in part, that his trial counsel was ineffective for (1) failing to request an interpreter solely for the defense, (2) failing to call Reyes' wife as a witness and improperly examining other witnesses, (3) failing to request a mistrial, and (4) failing to object to alleged prosecutorial misconduct. After a hearing, the post-conviction court issued findings of fact and conclusions of law denying Reyes' request for relief.

The post-conviction court first rejected the argument that trial counsel should have requested a separate defense interpreter for Reyes, who spoke Spanish and understood very little English. The court explained that in making this argument, Reyes relied on a case, *Arietta v. State*, 878 N.E.2d 1238 (Ind. 2008), that had been decided years after Reyes' trial, and therefore was inapplicable. The court concluded that when Reyes was on trial, a separate defense interpreter was not required, and thus trial counsel was not ineffective for failing to request one. *See* Appellant's App. p. 94-95. The post-conviction court also found that trial counsel was not ineffective for failing to call Reyes' wife as a witness and in examining other witnesses; counsel made strategic decisions in this context, which were entitled to deference. *Id.* at 98-100. The court next rejected Reyes' claim that trial counsel was ineffective for failing to request a mistrial following objectionable testimony from a number of witnesses. The court explained that counsel had objected to the testimony, requested admonishments, and moved for a mistrial appropriately. *Id.* at 97-98. Finally, the court found that trial counsel was not ineffective for failing to object to alleged prosecutorial misconduct. The court reasoned that no

---

[1] Reyes also argued that his appellate counsel was ineffective. *See* Appellant's App. p. 33. However, Reyes challenges only his trial counsel's performance in this appeal.

prosecutorial misconduct had occurred, thus no objection made on that basis would have been sustained. *Id.* at 101-02.

Reyes now appeals the denial of his request for post-conviction relief.

**Discussion and Decision**

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* The post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.* We accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.*

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Failure to satisfy either prong will cause the claim to fail. *French v. State*, 778

N.E.2d 816, 824 (Ind. 2002). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001).

## I. Defense Interpreter

Reyes first claims that his trial counsel was ineffective for failing to request a defense interpreter for Reyes, who speaks Spanish and understands limited English. However, two court-appointed interpreters were present throughout Reyes' trial. They functioned as "proceedings interpreters," and alternated between sitting at the defense table with Reyes and translating for the court at the witness stand and near the bench.[2] One of the interpreters also accompanied trial counsel to a meeting with Reyes in jail.

---

[2] In *Arrieta*, our Supreme Court noted the difference between proceedings interpreters and defense interpreters. Defense interpreters are for the benefit of non-English speaking defendants; they simultaneously translate English proceedings and aid attorney-client communications. *Arrieta*, 878 N.E.2d at 1242. "Proceedings interpreters serve the court by translating the speech of participants at various junctures." *Id.*

In arguing that trial counsel should have requested a separate defense interpreter, Reyes relies primarily on the case of *Arrieta v. State*. 878 N.E.2d at 1238; *see* Appellant's Br. p. 7-10. We need not analyze the applicability of *Arrieta*, however, because that case was decided in 2008, and Reyes was tried in 2005. Reyes' trial counsel cannot be ineffective for failing to anticipate a change in existing law. *Reed v. State*, 856 N.E.2d 1189, 1197 (Ind. 2006). Instead, *Martinez Chavez v. State*, 534 N.E.2d 731, 737 (Ind. 1989) governed this issue at the time of Reyes' trial.

In that case, the defendant, Martinez Chavez, was on trial for murder. Like Reyes, he spoke Spanish and understood limited English. At his trial, the court appointed one proceedings interpreter. After Martinez Chavez was convicted, he argued that he should have had a separate defense interpreter as well. Our Supreme Court disagreed, saying that Martinez Chavez used the proceedings interpreter to communicate with his counsel during recesses and at times other than during the trial, and thus Martinez Chavez was not denied the right to a fair trial. *Id.* In this case, Reyes had not one, but two proceedings interpreters, who alternated between sitting at the defense table with Reyes and translating for the court at the witness stand and near the bench. One of the interpreters also attended a meeting with Reyes and his trial counsel. Thus, under *Martinez Chavez*, which governed at the time of Reyes' trial, Reyes received the type of interpretation to which he was entitled. Trial counsel was not ineffective for failing to request a defense interpreter for Reyes.[3]

---

[3] Reyes says that some of his family members functioned as interpreters while he was on trial, and this is proof that a defense interpreter was needed. However, Reyes does not claim that they functioned as interpreters in lieu of the two court-appointed proceedings interpreters or that the proceedings interpreters were unavailable when needed. Instead, it appears that the family members

## II. Witnesses and the Defense Theory

Reyes' next claim pertains to trial counsel's treatment of witnesses and certain decisions made during Reyes' trial. Specifically, Reyes contends that trial counsel was ineffective for failing to call his wife, Veronica, as a witness, failing to properly examine Reyes, and failing to cross-examine some of the State's witnesses about alleged discrepancies between pre-trial statements and their trial testimony. According to Reyes, the defense theory was either self-defense or defense of others, particularly Reyes' wife, and counsel's failures hindered this theory.

Reyes first argues that trial counsel should have called Veronica to testify. "A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess." *Smith v. State*, 822 N.E.2d 193, 204 (Ind. Ct. App. 2005) (citation omitted), *trans. denied*. Deciding which witnesses to call at trial is the epitome of a strategic decision. *Wrinkles v. State*, 749 N.E.2d 1179, 1200 (Ind. 2001) (citing *Wisehart v. State*, 693 N.E.2d 23, 48 n.26 (Ind. 1998)). At the hearing on Reyes' PCR petition, trial counsel testified that while he could not recall the precise reason he had not called Veronica as a witness, the decision was strategic. Tr. p. 40-41. Reyes takes issue with trial counsel's failure to articulate the precise strategic reason for not calling Veronica. But the hearing on Reyes' PCR petition came approximately six years after Reyes' murder trial. Counsel is afforded considerable discretion in choosing strategy and

---

conveyed additional information to trial counsel or acted as "spokespersons" for the family. *See* Appellant's Br. p. 11.

    Reyes also argues that the proceedings interpreters made interpretation mistakes at his trial. *See id.* at 12-14. Even if mistakes were made, Reyes does not show how this supports a claim of ineffective assistance; it is not clear any mistakes would have been prevented if trial counsel had requested a separate defense interpreter. And Reyes does not claim that trial counsel knew of these mistakes. We find no basis for ineffective assistance with respect to either of these arguments.

tactics, and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. Here, counsel testified that he made a strategic decision, and Reyes has not shown otherwise. Nor has he shown that the outcome of the proceeding would have been different had Veronica testified.[4]

Reyes also argues that trial counsel did not refer to certain exhibits and confused the timeline of events leading up to the stabbing during Reyes' direct examination. However, Reyes testified on his own behalf and explained the sequence of events. And the exhibits in question were in evidence and available to the jury even if trial counsel did not reference them during Reyes' testimony. Reyes also claims that counsel was ineffective for failing to cross-examine some of the State's witnesses regarding discrepancies in their pre-trial statements and trial testimony. But this is a matter of strategy. *See Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010) ("[T]he method of impeaching witnesses is a tactical decision and as a matter of trial strategy that does not amount to ineffective assistance."). Reyes has not shown that these trial decisions constituted deficient performance, nor has he established that there is a reasonable probability that, but for these alleged errors, the result of the proceeding would have been different. The post-conviction court properly denied Reyes relief on this ground.

### III. Mistrial Motion

Reyes next contends that trial counsel was ineffective for failing to request a mistrial after four witnesses testified improperly about threats made by Reyes' brother,

---

[4] Within his argument that trial counsel should have called Veronica to testify, Reyes makes an additional, brief argument that Veronica was pregnant at the time of the killing and that trial counsel should have verified this fact. *See* Appellant's Br. p. 16. However, Reyes established this fact himself— he testified that his wife was pregnant both on direct and cross-examination. *See* Tr. p. 672, 696, 702.

Ignacio, to the victim. The record shows that trial counsel objected and requested admonishments after the improper statements. *See* Tr. p. 73-74, 144-45, 183-83, 293. And trial counsel moved for a mistrial after one instance of improper testimony, which the trial court denied.[5] *Id.* at 183-84. After the last instance of improper testimony, the trial court asked counsel to approach the bench and said it would entertain another mistrial motion if the improper testimony continued. *Id.* at 316-17. Reyes claims that trial counsel should have moved for a mistrial after the sidebar.

When addressing this argument, the post-conviction court found that there was no basis to request a mistrial after the trial court's final statement on the matter; in other words, there was no improper testimony after that point. *See* Appellant's App. p. 98 ("[Reyes] cites no further instances as to inappropriate testimony . . . *after the side-bar conference* . . . .") (emphasis added). Reyes contends that a witness made another improper statement after the sidebar. Specifically, Reyes points to the testimony of the victim's father that *Reyes*, not Ignacio, had made a threatening statement about the victim. But this was not improper testimony—this statement would have been admissible under Indiana Evidence Rule 801(d)(2) as a statement of a party-opponent. Thus any objection, much less a mistrial motion, would have been unfounded. The post-conviction court properly concluded that trial counsel was not ineffective in this respect.

### IV. Prosecutorial Misconduct

---

[5] Reyes maintains that trial counsel never actually made a mistrial motion because counsel made the motion orally and using informal language. *See* Appellant's Reply Br. p. 7. We disagree. The record shows that trial counsel made an oral motion for a mistrial, a request the trial court rejected in favor of a jury admonishment. Tr. p. 184-85. There is no requirement that a mistrial motion be made in writing or that any specific language be used, so long as counsel clearly identifies the motion being made.

Reyes' final challenge is based on the improper testimony discussed above and also what he claims is exculpatory evidence. Reyes argues that trial counsel should have made a prosecutorial-misconduct objection to the improper testimony cited above. To establish ineffective assistance for counsel's failure to object, a petitioner must show that the trial court would have sustained the objection had it been made and that the petitioner was prejudiced by the failure to object. *Jones v. State*, 847 N.E.2d 190, 197-98 (Ind. Ct. App. 2006) (citing *Wrinkles*, 749 N.E.2d at 1192)), *reh'g denied*, *trans. denied.* Stated another way, the petitioner must demonstrate that had the objection been made, the trial court would have had no choice but to sustain it. *Oglesby v. State*, 515 N.E.2d 1082, 1084 (Ind. 1987).

The record shows that although a number of witnesses gave improper testimony, the prosecutor was not eliciting this testimony or otherwise encouraging it. In fact, the trial court acknowledged that the prosecutors were trying to prevent witnesses from making any improper statements. *See* Tr. p. 317 ("[T]he prosecutors are doing nothing wrong. They are doing everything they can do to keep it from happening, but it just keeps happening. End of story."). Therefore, it seems highly unlikely that a prosecutorial-misconduct objection, if made, would have been sustained. Reyes has not shown ineffective assistance here.

Reyes also claims that the State failed to reveal exculpatory evidence—a razor that the victim had used the day of the killing to cut window-tint paper. But Reyes has not shown that this razor was ever in the State's possession, and trial counsel testified that he would have objected if he thought the State had failed to reveal evidence to the defense.

There is also no reason to believe this evidence would be exculpatory. At Reyes' trial, the testimony about the razor was that the victim had been using it to cut window-tint paper and had set it aside before his altercation with Reyes; there was no suggestion that it was involved in the altercation. The post-conviction court properly denied Reyes relief on this ground.

Affirmed.

BAILEY, J., and BROWN, J., concur.