**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DYLAN A. VIGH**
Law Offices of Dylan A. Vigh, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LAKHVIR SINGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1309-CR-761 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol Orbison, Senior Judge
Cause No. 49G05-1203-FB-13930

**June 13, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Lakhvir Singh appeals his convictions for Class D felony sexual battery, Class B felony rape, Class B felony attempted criminal deviate conduct, Class A misdemeanor domestic battery, and Class D felony strangulation. We affirm.

**Issues**

Singh raises several issues, which we restate as:

I. whether the evidence is sufficient to sustain his conviction for Count VIII, attempted criminal deviate conduct;

II. whether the trial court committed fundamental error by failing to inquire into an interpreter's qualifications;

III. whether the trial court properly instructed the jury regarding Count VIII, attempted criminal deviate conduct;

IV. whether the trial court abused its discretion when it sentenced Singh; and

V. whether the sentence is inappropriate.

**Facts**

In May 2010, Parminder Multani was working on his graduate degree at Purdue University. Multani's mother and sister, twenty-eight-year-old S.K., came to Indiana from India to visit Multani. S.K. was a high school teacher in India. She speaks Punjabi and does not speak English. Unknown to S.K., her mother had apparently arranged for S.K. to marry Singh, whom she had never met. While in Indiana, Multani, S.K., and their mother went to a party at Singh's family's home. At that party, S.K. learned that she was engaged to marry Singh. S.K. was shocked by the arranged marriage but tried to respect

2

her mother's wishes. Nine or ten days later, on May 29, 2010, S.K. married Singh in Indianapolis.

After the marriage, Singh and S.K. lived with his aunt, uncle, and his aunt's family in New Castle. While they lived there, S.K. was treated "like the servant." Tr. p. 239. She had to cook all of the meals, clean the entire house, and do all of the laundry. If she did not clean or did not do it properly, Singh would beat her. She was only allowed to eat leftover food and drink water. She would sleep on the floor of the bedroom, and Singh would sleep on the bed. S.K. was not allowed to leave the house, and Singh threatened to kill her if she did so.

On July 10, 2010, Singh and S.K. moved into an apartment near Greenwood. Singh would not allow S.K. to leave the apartment, get a job, or go to the temple. She again was only allowed to eat his leftovers and only allowed to drink water. He slapped her when he discovered that she was drinking milk while he was gone. He would often slap, punch, and kick her. Singh forced S.K. to have sexual intercourse with him. He also pushed her down, sat on her chest, squeezed her mouth until it opened, and put his penis in her mouth. When she started throwing up, he slapped her several times and left.

Multani learned about Singh's treatment of S.K. and confronted him about it over the telephone on August 31, 2010. Singh got angry and threatened Multani, and Multani could hear Singh beating S.K. during the call. Singh broke the phone and put his hands around S.K.'s neck and squeezed. Singh also threatened S.K. with a kitchen knife. When S.K. tried to leave the apartment, Singh again put his hand on her neck and squeezed harder than he had ever done before, making it difficult for S.K. to breathe.

3

The next day, when Singh left for work, S.K. left the apartment, found an Indian couple, and used their phone to call Multani. Multani drove to S.K.'s apartment and called 911 for help.

Officers Lee Rabensteine and David Pankoke responded to Multani's 911 call. Officer Rabensteine knocked loudly on the door of Singh and S.K.'s apartment, and he could hear a woman crying in the apartment. Eventually, Singh answered the door, and the officers entered the apartment. Officer Rabensteine saw that the living room was "in a state of disorder," with furniture knocked over and broken glass in the corner. Id. at 93. S.K. had a mark underneath her eye and marks on her neck.

Ultimately, the State charged Singh with: Count I, Class B felony promotion of human trafficking; Count II, Class B felony rape; Count III, Class D felony sexual battery; Count IV, Class B felony rape; Count V, Class D felony sexual battery; Count VI, Class B felony criminal deviate conduct; Count VII, Class D felony sexual battery; Count VIII, Class B felony attempted criminal deviate conduct; Count IX, Class A misdemeanor domestic battery; Count X, Class A misdemeanor domestic battery; Count XI, Class D felony strangulation; and Count XII, Class A misdemeanor domestic battery.

During the trial, an interpreter translated for S.K. and Singh's uncle and aunt. The trial court administered the interpreter's oath but did not inquire into the interpreter's qualifications. The interpreter did not assist Singh, who testified in English. The jury found Singh guilty of Count III, sexual battery; Count IV, rape; Count V, sexual battery; Count VIII, attempted criminal deviate conduct, Count IX, domestic battery, Count X, domestic battery, Count XI, strangulation; and Count XII, domestic battery. The jury

4

acquitted Singh of the remaining charges. Due to double jeopardy concerns, the trial court sentenced Singh only for the convictions related to Counts III, IV, VIII, IX, and XI. The trial court sentenced Singh to one and one-half years on Count III, fifteen years on Count IV, ten years on Count VIII, one year on Count IX, and three years on Count XI, with the ten-year sentence consecutive to the fifteen-year sentence and the remaining sentences concurrent, for an aggregate sentence of twenty-five years. The trial court ordered twenty years to be served in the Department of Correction and five years in community corrections. Singh now appeals.

**Analysis**

*I. Sufficiency of the Evidence*

Singh argues that the evidence is insufficient to sustain his conviction for Count VIII, attempted criminal deviate conduct. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

To convict Singh of attempted criminal deviate conduct as a class B felony, the State needed to prove that he: (1) knowingly or intentionally; (2) took a substantial step; (3) toward causing S.K. to perform or submit to deviate sexual conduct; (4) when she was

5

compelled by force or imminent threat of force.  See Ind. Code § 35-42-4-2; I.C. § 35-41-5-1.  The charging information for Count VIII provided:

> Lakhvir Singh, on or about or between August 1, 2010 and August 30, 2010, did attempt to commit the crime of Criminal Deviate Conduct, that is, to knowingly cause S.K. to perform or submit to deviate sexual conduct, an act involving a sex organ, that is: penis of Lakhvir Singh and the mouth of S.K., when S.K. was compelled by force or imminent threat of force to submit to such deviate sexual conduct, by engaging in conduct that constituted a substantial step toward the commission of the crime of Criminal Deviate Conduct, that is, Lakhvir Singh used his body weight against S.K., straddled her chest while pushing his penis towards S.K.'s mouth and stated, "I am going to put it in your mouth until I come."

App. pp. 28-29.

Singh seems to argue that the evidence is insufficient to sustain this conviction because he was charged with an attempted act, but the evidence introduced at trial indicated that he completed the act.  S.K. first testified regarding an incident where Singh attempted to place his penis in her mouth, but she refused to open her mouth.  This incident was the basis for Count VI, criminal deviate conduct, and Singh was acquitted of this charge.  S.K. also testified to a later incident when Singh pinned her down by sitting on her chest and placed his penis in her mouth until she vomited.  This incident was the basis for Count VIII, attempted criminal deviate conduct.

Under the attempt statute, the offense is complete when, "acting with the culpability required for commission of the crime, [a person] engages in conduct that constitutes a substantial step toward commission of the crime."  I.C. § 35-41-5-1.  Thus, the offense was complete when Singh sat on S.K.'s chest while attempting to put his

6

penis in her mouth. It is irrelevant that, according to S.K.'s testimony, he was ultimately able to complete the act. The evidence is sufficient to sustain Singh's conviction for Count VIII, attempted criminal deviate conduct.

## *II. Interpreter*

Singh argues that the trial court did not properly inquire into the interpreter's qualifications.[1] According to Singh, this error "effectively denied him an interpreter." Appellant's Br. p. 10. Singh acknowledges that he did not object, but he contends that fundamental error occurred. The "[f]ailure to object at trial waives the issue for review unless fundamental error occurred." Treadway v. State, 924 N.E.2d 621, 633 (Ind. 2010). "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (internal quotation omitted). "This exception is available only in egregious circumstances." Id. (internal quotation omitted).

---

[1] Our supreme court has differentiated between defense interpreters and proceedings interpreters. Arrieta v. State, 878 N.E.2d 1238, 1242 (Ind. 2008). Defense interpreters "benefit the non-English-speaking defendant by simultaneously translating the English proceedings and assisting with attorney-client communications." Id. Proceedings interpreters "serve the court by translating the speech of participants at various junctures." Id. Singh's argument concerns a proceedings interpreter.

At the time of Singh's trial, Indiana Evidence Rule 604 provided: "An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation."[2]  Although the interpreter here was given an oath, the trial court did not inquire regarding the interpreter's qualifications.  At the beginning of Singh's testimony, the following discussion occurred:

> Q  Now Mr. Singh . . . Can you speak in English?
> A  Yes, sir, I do and some word I can't understand, but I do.
> Q  Okay.  If you have a problem with a word, then you can consult the lady sitting to your left there and ask her, okay?
> A  Yes, sir.
> Q  Okay, let's try it in English.

Tr. p. 430.  The State objected to Singh going "back and forth" between English and Punjabi.  Id. at 431.  The trial court stated: "He sounds as if he speaks fairly good English.  If there's a problem, I'm going to advise him not to consult with an interpreter but to indicate he does not understand the word."  Id.  The trial court then instructed Singh: "If there is a word you do not understand, let the court know instead of consulting with the interpreter and then we will have that word interpreted into your language."  Id. at 432.  Singh did not consult with the interpreter or have any words translated into Punjabi during his testimony.

The State argues that Singh was not entitled to an interpreter because he could speak and understand English.  We need not address this argument because, even if Singh was entitled to an interpreter, he has failed to demonstrate that fundamental error

---

[2] The rule was amended effective January 1, 2014, and now provides: "An interpreter must be qualified and must give an oath or affirmation to make a true translation."

occurred by the trial court's failure to inquire into the interpreter's qualifications. Singh argues that the error was fundamental because, at one point in his testimony, he struggled with the word "force." Tr. pp. 446-47. However, the trial court found that Singh was able to speak in English, and he did so throughout the trial. When Singh struggled with the definition of "force," Singh's counsel clarified the question, and Singh explained his response. The trial court's failure to inquire into the interpreter's qualifications simply did not rise to the level of making a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process. Consequently, Singh's fundamental error argument fails. See Tesfamariam v. Woldenhaimanot, 956 N.E.2d 118, 123 (Ind. Ct. App. 2011) (holding that the trial court's failure to administer an oath or address the interpreter's qualifications did not result in fundamental error); Mariscal v. State, 687 N.E.2d 378, 382 (Ind. Ct. App. 1997) (holding that the trial court's failure to address the interpreter's qualifications did not result in fundamental error), trans. denied.

### III. Jury Instructions

Singh argues that the trial court erred when it instructed the jury regarding Count VIII, attempted criminal deviate conduct. Instructing a jury is left to the sound discretion of the trial court, and we review its decision only for an abuse of discretion. Washington v. State, 997 N.E.2d 342, 345 (Ind. 2013). We undertake a three-part analysis in determining whether a trial court has abused its discretion. Id. First, we determine whether the tendered instruction is a correct statement of the law. Id. Second, we examine the record to determine whether there was evidence to support the tendered

9

instruction.  Id. at 345-46.  Finally, we determine whether the substance of the tendered instruction was covered by another instruction or instructions.  Id. at 346.

The trial court rejected the following proposed final instruction tendered by Singh:

> The crime of Attempted Criminal Deviate Conduct, a class B felony with which the Defendant is charged in Count 8, is defined as follows:
>
> A person attempts to commit Criminal Deviate Conduct when, acting with the culpability required for the commission of the crime of Criminal Deviate conduct, he engages in conduct that constitutes a substantial step toward the commission of the crime of Criminal Deviate Conduct.
>
> A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when the other person is compelled by force, or imminent threat of force, commits Criminal Deviate Conduct, a class B felony.
>
> To convict the Defendant of the crime of Attempted Criminal Deviate Conduct, the State must prove each of the following elements beyond a reasonable doubt:
>
> 1. The Defendant, Lakhvir Singh,
> 2. knowingly,
> 3. attempted to commit the crime of Deviate Sexual Conduct
> 4. by straddling the chest of [S.K.] and pushing his penis toward her mouth while stating, "I am going to put it in your mouth until I come;"
> 5. which act constituted a substantial step towards commission of the crime of Criminal Deviate Conduct, which is to knowingly cause [S.K.] to perform or submit to deviate sexual conduct, an act involving the penis of Lakhvir Singh and the mouth of [S.K.], when [S.K.] was compelled by force or the imminent threat of force.

10

If the State failed to prove any of the above elements beyond a reasonable doubt, you must find the Defendant not guilty.

If the State did prove each of the above elements beyond a reasonable doubt, you may find the Defendant guilty of Attempt Criminal Deviate Conduct, a class B felony as charged in Count 8.

App. pp. 112-13.  Instead, the trial court gave the following final instruction:

The crime of Attempted Criminal Deviate Conduct, a class B felony with which the defendant is charged in Count 8, is defined by statute as follows:

A person attempts to commit Criminal Deviate Conduct when, acting with the culpability required for the commission of the crime of Criminal Deviate Conduct, he engages in conduct that constitutes a substantial step toward the commission of the crime of Criminal Deviate Conduct.

A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct with the other person is compelled by force, or imminent threat of force, commits Criminal Deviate Conduct, a class B felony.

To convict the defendant of the crime of Attempted Criminal Deviate Conduct, the State must prove each of the following elements beyond a reasonable doubt:

1. The defendant, Lakhvir Singh,
2. knowingly,
3. attempted to commit the crime of Deviate Sexual Conduct
4. by engaging in conduct that constituted a substantial step toward the commission of the crime of Criminal Deviate Conduct, which is:

  (a) to knowingly cause [S.K.] to perform or submit to deviate sexual conduct, an act involving the penis of Lakhvir Singh and the mouth of [S.K.]; and

11

> (b)  when [S.K.] was compelled by force or imminent threat of force.

> If the State failed to prove any of the above elements beyond a reasonable doubt, you must find the defendant no[t] guilty.

> If the State did prove each of the above elements beyond a reasonable doubt, you may find the Defendant guilty of Attempt Criminal Deviate Conduct, a class B felony charged in Count 8.

Id. at 95-96.

Singh argues that the trial court's final instruction was erroneous because it did not include the specific factual allegations that were included in the charging information. We need not address his argument because, although he argues that the instruction was defective because it was missing the factual allegations, he makes no argument that the tendered instruction was not covered by other instructions given. In fact, Preliminary Instruction Number 7 included the specific factual allegations regarding Count VIII. Final Instruction Number 18 provided: "You should consider the Preliminary Instructions along with the following Final Instructions in arriving at your verdict in this case. All of the Instructions should be considered together." App. p. 83. Consequently, Singh's proposed instruction was covered by other instructions, and the trial court did not err by refusing Singh's tendered instruction.[3]

### IV. Sentencing – Abuse of Discretion

---

[3] Singh relies on Evans v. State, 571 N.E.2d 1231 (Ind. 1991), for the proposition that the trial court's instruction was erroneous. However, in Evans, "[t]he trial court, however, did not repeat the preliminary instructions in its final instructions, nor did it give a final instruction which incorporated the preliminary instructions or which made reference to them in any way." Evans, 571 N.E.2d at 1233. "Therefore, the jury did not receive the factual allegations which constituted the kidnapping charge as part of its final instructions." Id. Here, the trial court did reference the preliminary instructions.

Singh argues that the trial court abused its discretion when it sentenced him. Sentencing decisions are within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. However, a trial court may be found to have abused its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that explains reasons for imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given are improper as a matter of law. Id. at 490-91. The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. Id. The weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. Id.

Singh argues that the trial court abused its discretion by considering the impact on S.K. and her family as an aggravator. The trial court found that Singh's position of trust and pattern of repeated physical and mental abuse of S.K. were aggravators. The trial court then stated:

> I think that the most egregious aggravator in this case is the fact that Mr. Singh turned on its head the cultural norms, traditions and taboos of his country. Basically using them as a means to control and abuse another human being. Arranged marriages are a common occurrence in India and I have to think and I've heard testimony to the fact that for the most part they are good marriages, happy marriages, long marriages, if done in the right way and in the spirit in which this tradition has become customary in India. Mr. Singh was well aware of the fact that this young woman, through respect for her mother as is the tradition and the norm in India, she

13

> would never not do as her mother wished and refuse to enter into this marriage. He was also fully aware of the fact that for this young woman to return to India and divorce and leave her husband, she would never be accepted back into the culture from which she came. She would be a disgrace on her family. And that her mother would most probably consider her to be someone no longer deserving of affection and protection and support.

Tr. pp. 600-01.

Singh argues that this aggravator involved victim impact. Victim impact is an improper aggravator where there is nothing in the record to indicate that the impact on the victim was different than the impact generally experienced by victims of the same crime. McElroy v. State, 865 N.E.2d 584, 590 (Ind. 2007). Even if we consider this statement to be a victim impact aggravator, the trial court clearly indicated that, due to her culture, the harm suffered by S.K. was different than the harm generally experienced by victims of the same offenses. Moreover, we believe that the trial court's statement is more appropriately described as a nature and circumstances of the offense aggravator. Our supreme court has held that the nature and circumstances of a crime is a proper aggravating factor. McCann v. State, 749 N.E.2d 1116, 1120 (Ind. 2001). The trial court did not abuse its discretion when it sentenced Singh.

### V. Sentencing - Inappropriateness

Singh argues that his sentence is inappropriate in light of the nature of the offenses and the character of the offender. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses

14

and the character of the offender.  When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision.  Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).  Still, we must give due consideration to that decision.  Id.  We also understand and recognize the unique perspective a trial court brings to its sentencing decisions.  Id.  Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate.  Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008).  We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count."  Id.  When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended.  Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of the offense is that Singh married S.K., who was from India and did not speak English, through an arranged marriage.  He proceeded to treat her terribly, both physically and emotionally.  Singh forced her to cook and clean, and he beat her when she did not cooperate.  He also forced her to have sexual intercourse with him and held her down while attempting to have oral sex with her.  He regularly beat her, would not

15

allow her to leave their apartment, would not allow her to go to the temple, and deprived her of food. Singh acknowledged in his testimony at the trial that he hit S.K., called her names, and got into many arguments with her.

As for the character of the offender, we acknowledge that several of Singh's relatives and his current wife spoke to his good character. However, the trial court properly noted: "I can certainly believe that Mr. Singh, among friends and contacts, never displayed this kind of aggressiveness or abusive behavior or language towards other people." Tr. p. 602. Singh's actions toward S.K. certainly do not speak well regarding his character. We also acknowledge that the instant convictions are Singh's first convictions. However, despite Singh's minimal criminal history, we conclude that, given his repeated abuse of S.K. over several months, his twenty-five-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

**Conclusion**

The evidence is sufficient to sustain Singh's conviction for Count VIII, attempted criminal deviate conduct. Fundamental error did not occur as a result of the trial court's failure to inquire into the interpreter's qualifications, and the trial court did not err by refusing Singh's proposed instruction regarding Count VIII. Finally, the trial court did not abuse its discretion when it sentenced Singh, and his twenty-five-year sentence is not inappropriate. We affirm.

Affirmed.

BAKER, J., and CRONE, J., concur.

16