ATTORNEY FOR APPELLANT
Victoria Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S02-1212-CR-669

JAMAR WASHINGTON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F15-1105-FD-030605
The Honorable James Osborn, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1202-CR-79

**November 12, 2013**

**David, Justice.**

In this case the defendant alleges that the trial court improperly instructed the jury regarding his claim that he was acting in defense of another. The defendant argues that the Court of Appeals misinterpreted our precedent in this area. Finding that the trial court did not err in its

final instructions when it used the existing Indiana Pattern Jury Instruction on defense of another, we affirm the defendant's conviction but remand the case to the trial court to correct an error in the abstract.

**Facts and Procedural History**

Jamar Washington lived with his girlfriend, Dynasty Brown, and their two children, eight-month-old Jc.W. and two-year-old Ja.W., as well as Dynasty's five-year-old child from a prior relationship. On the evening of May 1, 2012, into the early morning of May 2, 2012, Washington went to a night club in downtown Indianapolis. Sometime after he left, Brown received a Facebook message asking if she knew Washington was at Club Hyde, and then a second picture message of Washington with another woman. When Washington did not answer Brown's phone calls, she drove downtown to confront him. She took eight-month-old Jc.W along.

Brown arrived downtown and found Washington standing outside the night club talking to a woman, Deja Crayton. While holding Jc.W., Brown punched Washington in the eye and then punched Crayton. A fight ensued and a crowd gathered. A woman in the crowd yelled, "Girl, give me your baby!" [Tr. 72.] Brown gave Jc.W. to the woman and then continued to fight with Crayton.

Indianapolis Metropolitan Police Officer Cedric Young attempted to break up the fight between the two women. Officer Young grabbed Brown from behind, picked her up, and put her on the hood of a nearby car. Washington did not know that Brown had handed their baby to a woman in the crowd and so believed Officer Young was harming Jc.W. Washington grabbed Officer Young around the neck and tried to pull him off Brown.

A second officer on the scene, Officer Christopher Faulds, was trying to calm the crowd when he saw Washington jump on Officer Young's back. Three other officers who were present and assisting in crowd control also attempted to come to the aid of Officer Young. Officer Lisa Weilhammer fell during the struggle with Washington and hit her head on the pavement. Officer Geoffrey Barbieri, while trying to prevent Officer Weilhammer from falling, fell to his knees on the pavement. During the melee, Washington kicked Officer Barbieri several times.

2

The police officers were eventually able to get Washington into handcuffs and he was taken into custody. The State charged him with Class D felony strangulation, three counts of Class D felony resisting law enforcement, three counts of Class D felony battery on a police officer resulting in injury, and one count of Class B misdemeanor disorderly conduct. The State later dismissed two of the battery counts.

Washington was subsequently tried by a jury. After the evidence was presented, and over the State's objection, the trial court agreed to give the jury a pattern instruction regarding the defense of another. Washington tendered the following instruction, which largely paralleled the instruction eventually given.

Defendant's Tendered Instruction No. 2:

Use of force to defend another person is a legal defense.

A person is justified in using reasonable force against another person to protect a third person from what the person reasonably believes to be the imminent use of unlawful force.

No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting a third person by reasonable means necessary.

The State has the burden of disproving this defense beyond a reasonable doubt.

(App. at 101, 131; Tr. 239–40.) But Washington also tendered two additional instructions, both of which were refused by the trial court.

Defendant's Tendered Instruction No. 3:

A man has a right to act upon appearance of actual and immediate danger if he sincerely believes such apparent danger exists. The danger need not be actual. It need be only apparent to a reasonable person under the circumstances. He will not be accountable for an error in judgment as to the need to use force or the amount of force necessary, provided he acted honestly. The law protects persons who feel compelled to act at such times even though in retrospect it is proved they have erred. The danger need not be actual but the belief must be in good faith and the reaction must be reasonable.

Defendant's Tendered Instruction No. 4:

With regard to the defense of another, the existence of the danger, the necessity or apparent necessity of force, as well as the amount of force required to resist the

3

attack can only be determined from the standpoint of the Accused at the time and under the then existing circumstances.

Ordinarily, one exercising the right to defense of another is required to act upon the instant and without time to deliberate and investigate, and under such circumstances a danger which exists only in appearance is as real and imminent to him as if it were actual.

A defender [sic] will not be accountable for an error in judgment as to the need to use force or amount of force necessary.

(App. at 102–03.) Washington cited French v. State, 273 Ind. 251, 403 N.E.2d 821 (1980), Franklin v. State, 264 Ind. 540, 364 N.E.2d 1019 (1977), and Drake v. State, 369 N.E.2d 941 (Ind. Ct. App. 1977) as the basis for his instruction no. 3 and French as the basis for instruction no. 4. The trial court found both instructions were cumulative and unnecessary in light of the instruction it gave.

Instruction No. 34:

It is an issue whether the Defendant acted in defense of another person.

A person may use reasonable force against another person to protect someone else from what the Defendant reasonably believes to be the imminent use of unlawful force.

No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting a third person by reasonable means necessary.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in defense of another person.

(App. at 131.) This instruction was based on the Indiana Pattern Jury Instruction for defense of another. See Ind. Pattern Jury Inst. 10.03A (Feb. 2013).

Washington was found guilty of two counts of resisting law enforcement, one count of battery of a law enforcement officer resulting in injury, and one count of disorderly conduct. He was sentenced to an aggregate of 730 days with 90 days served in the Indiana Department of Correction, credit for 23 days served prior to sentencing, and the balance of the sentence to be served in the home detention component of Marion County Community Corrections.

4

Washington appealed the trial court's refusal to give his tendered jury instructions. The Court of Appeals affirmed. Washington v. State, 973 N.E.2d 91 (Ind. Ct. App. 2012). We have granted transfer to address the jury instructions for self-defense and defense of another and the interpretation of Shaw v. State and French v. State.

**Standard of Review**

Instructing a jury is left to the sound discretion of the trial court and we review its decision only for an abuse of discretion. Stringer v. State, 853 N.E.2d 543, 548 (Ind. Ct. App. 2006). We undertake a three-part analysis in determining whether a trial court has abused its discretion. Walden v. State, 895 N.E.2d 1182, 1186 (Ind. 2008). First, the reviewing court should determine whether the tendered instruction is a correct statement of the law. Id. Second, it "examines the record to determine whether there was evidence present to support the tendered instruction." Id. Finally, it "determines whether the substance of the tendered instruction was covered by another instruction or instructions." Id.

**Discussion**

The trial court gave only the pattern jury instruction and not Washington's tendered instructions no. 3 and no. 4. Washington claims his additional tendered instructions were necessary to adequately inform the jury that he could successfully claim defense of another, even if he was mistaken about Brown no longer holding their infant son when Officer Young attempted to restrain her.

**I. French and Shaw**

Central to the resolution of Washington's alleged instructional error are two previous cases decided by this Court: French and Shaw v. State, 534 N.E.2d 745 (Ind. 1989). Some confusion seems to exist as to whether Shaw repudiated French, and what the correct statement of the law is regarding the instructions for self-defense and defense of another in light of our precedent.

In French, the defendant claimed self-defense in a murder prosecution. French, 273 Ind. at 253, 403 N.E.2d at 823. The homicide occurred in the parking lot of a bar where the decedent

5

and several other men were drinking in the late afternoon. French testified he approached the men and noticed an eighteen- or nineteen-year-old youth. French was active in youth programs and told the youth he did not belong there. According to French's testimony, the scene escalated between French and the decedent with the crowd forming around them and French attempting to walk away. French testified that the decedent charged him and he backed away with his gun pointed at the decedent. As he backed away, he bumped into a car and the gun accidentally fired, hitting the decedent in the heart leading to his death. French's testimony was diametrically opposed to the testimony of the State's witnesses, who claimed a cold-blooded murder. Nevertheless, French requested and the trial court appropriately determined that the jury instruction on self-defense was warranted. The trial court gave the following instruction:

> A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person in the commission of a forcible felony.

Id. at 255, 403 N.E.2d at 824. We held this instruction to be inadequate and that reversible error resulted, stating:

> At no point in the instructions given was the jury informed that in the exercise of the right, a defender may repel force by force reasonably necessary and that he will not be accountable for an error in judgment as to the amount of force necessary, provided he acted honestly. Neither did the court's instructions apprize the jury that the existence of the danger, the necessity or apparent necessity, as well as the amount of force required to resist the attack can only be determined from the standpoint of the defendant, at the time and under the then existing circumstances.

Id. at 256, 403 N.E.2d at 825.

We wrote at the time that the instruction that "a person is justified in using [] force only if he reasonably believes it to be necessary" required balancing the subjectivity of the defendant's perception of the circumstances on one hand and the reasonableness of such perception on the other. Id. We said it is required that the defendant also acted honestly, determined from the standpoint of the defendant, at the time and under the circumstances. Id.

6

In Shaw, we addressed another murder case involving jury instruction challenges, and further delved into the balancing of the defendant's subjective belief against what a reasonable person would believe under the same or similar circumstances. Shaw, 534 N.E.2d at 746. Shaw lived in a trailer with three other women and met the decedent shortly after moving in. The decedent made obscene sexual remarks toward the women and barged into the trailer at other times in various states of intoxication. At a later date, Shaw and her trailer roommates held a party and eventually a quarrel developed between the decedent and partygoers. Shaw retreated to the trailer, grabbed a kitchen knife, went outside and confronted the decedent, stabbing him in the abdomen leading to his death. Over Shaw's objection, the trial court refused the following tendered Final Instructions No. 3, No. 4, and No. 7 regarding the doctrine of self-defense.

Final Instruction No. 3:

The Court instructs you that one person may kill another under such circumstances that the homicide or killing constitutes no crime but is justified by the law. This is known as the law or doctrine of self defense and may be stated for your guidance as follows:

If a person, being himself without fault, is assaulted in a place where he has a right to be, so far as his assailant is concerned, he may, without retreating, repel his assailant by force; and he need not believe that his safety requires him to kill his adversary in order to give him a right to make use of force. When from the act of his assailant he believes, and has reasonable grounds to believe, that he is in danger of losing his life or receiving great bodily harm from his adversary, the right to defend himself from such danger or apprehend danger, may be exercised by him; and he may use it to any extent which is reasonably necessary and if his assailant is killed as a result of the reasonable defense of himself, he is excusable in the eyes of the law. The questions of the existence of such danger, the necessity or apparent necessity, as well as the amount of force necessary to employ to resist the attack can only be determined "from the standpoint of the defendant" (emphasis added) at the time and under all of the then existing circumstances. Ordinarily, one exercising the right to self defense is required to act upon the instant and without time to deliberate and investigate; and under such circumstances a danger which exists only in appearance is as real and imminent to him as if it were actual.

A person in the exercise of the right of self defense must act honestly and conscientiously.

When all danger and all apparent danger of the loss of life or of receiving serious bodily injury from the assault of his assailant is at an end and passed, then the right to use force is at an end and should cease. The person exercising the right of

7

self defense must honestly believe and have reasonable cause to believe, when he makes use of force to protect himself from an assailant, that at the time he used the force it is then necessary to do so to protect his life or protect his person from serious bodily injury.

One who is in no apparent danger and who has no reasonable ground for such apprehension cannot kill another and successfully interpose the defense of self defense.

Final Instruction No. 4:

When the evidence fails to show, on the part of the defendant, any motive to make an assault or commit a crime, such lack of motive is a circumstance in favor of the innocence of the party accused, and in this case, if the jury finds, upon a careful examination of all the evidence, that it fails to show any motive on the part of the defendant to commit the crime charged, then such failure to show motive should be considered by the jury as a circumstance in favor of her innocence and as supporting her claim of self defense. On the other hand, if the jury finds, upon a careful examination of the evidence, that the deceased had a motive for making an assault upon the defendant, then this is a circumstance which the jury may consider in connection with all the evidence in the case, in determining whether or not the deceased made a deadly attack upon the defendant in pursuance of such motive, and whether or not the defendant killed the deceased in her own self defense.

Final Instruction No. 7:

A defendant's belief that he is in apparent danger does not require that danger be actual in order to support a claim of self defense, but only that the belief be in good faith.

(Shaw v. State Appellant's App. at 497–99 (available on microfilm).) In support of these instructions, Shaw cited Shepherd v. State, 451 N.E.2d 1118 (Ind. 1983), Brown v. State, 255 Ind. 594, 265 N.E.2d 699 (1971), and Gilmore v. State, 229 Ind. 359, 98 N.E.2d 677 (1951). Instead, the trial court gave the following self-defense instructions to the jury:

A person is justified in using reasonable force against another person to protect herself from what she reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if she reasonably believes that the force is necessary to prevent serious bodily injury to herself or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting herself by reasonable means necessary.

There are three (3) requirements for self defense when deadly force is used:

8

(1) The defendant must have acted without fault;

(2) The defendant must have had a right to be where she was; and,

(3) The defendant must have reasonably believed that she was in immediate danger of death or serious bodily harm.

Once a claim of self defense is raised, the State bears the burden of disproving the existence of one of these elements beyond a reasonable doubt. . . .

Although threats alone are not sufficient to justify an assault, a threat at a time when there is the present ability to assault, and under circumstances which lead a person in good faith reasonably to believe that he is about to be seriously injured or killed is sufficient on the theory of self defense.

Shaw, 534 N.E.2d at 747. After reviewing the actual instruction given by the trial court, we stated:

The jury was repeatedly told that the standard to be considered by the jury was the reasonable belief of the defendant . . . We cannot see how such language could be interpreted by a jury in any manner other than that the standard to be used was the state of mind of the defendant at the time of the infliction of the injury.

Id.

This is not out of line with what we said nine years prior in French. The defendant is entitled to have the jury consider the facts and circumstances known to the defendant (i.e., his or her subjective belief), but those facts and circumstances must be balanced against what a reasonable person would believe under the same or similar circumstances. Thus, Shaw did not expressly repudiate French. Instead, Shaw elaborated on—and attempted to clarify—French. The Shaw jury was "repeatedly told that the standard to be considered by the jury was the reasonable belief of the defendant." Id. That was a correct statement of the law. In French, the jury was not so instructed. That was error.

## II. The Trial Court's Instruction

The Indiana Pattern Jury Instruction regarding defense of another tracks the language of the self-defense and defense of another statute. See Ind. Code § 35-41-3-2(c) (Supp. 2012). We believe that in doing so it is also consistent with our precedent.

In Littler v. State, 871 N.E.2d 276, 279 (Ind. 2007), we looked at other states' self-defense statutes. Eighteen-year-old Neal Littler died from a gunshot wound suffered in a fight

9

with his twin brother, Phillip. Id. at 276. We found helpful the words of the Alaska Supreme, where it recognized that self-defense comprises both a subjective and objective component:

> [T]o employ self-defense a defendant must satisfy both an objective and subjective standard; he must have actually believed deadly force was necessary to protect himself, and his belief must be one that a reasonable person would have held under the circumstances.

Id. at 279 (quoting Weston v. State, 682 P.2d 1119, 1121 (Alaska 1984)). This approach, we noted, was also reflected in State v. Lewis, 245 Conn. 779, 811, 717 A.2d 1140, 1157–58 (1998), State v. Augustin, 101 Haw. 127, 132, 63 P.3d 1097, 1102 (2002), State v. Smith, 472 A.2d 948, 950 (Me. 1984), State v. Moore, 158 N.J. 292, 309–10, 729 A.2d 1021, 1030 (1999), and People v. Goetz, 68 N.Y.2d 96, 113, 497 N.E.2d 41, 51–52, 506 N.Y.S.2d 18, 28–29 (N.Y. 1986). Littler, 871 N.E.2d at 279. So again we emphasized that the phrase "reasonably believes" in the Indiana self-defense statute requires both a subjective belief that force was necessary to prevent serious bodily injury and that a reasonable person under the circumstances would have such an actual belief. Id.

While Littler was not a case focusing on jury instructions, it is helpful in our analysis of the components of a self-defense or defense of another instruction. It emphasizes that "reasonable belief" also includes what a reasonable person would believe if standing in the shoes of the defendant.

Similarly, in another case that did not necessarily look at jury instructions, we discussed the components of the self-defense statute. Hirsch v. State, 697 N.E.2d 37 (Ind. 1998). We highlighted the "standpoint of the defendant" language from French, and again emphasized that the language meant the jury should examine circumstances as they appeared to the defendant. But while the defendant's own account is critically relevant, the standard is still the reasonableness of the belief of the defendant. We wrote:

> Our decisions have long emphasized the central importance of the defendant's testimony in a self-defense case: "The question of the existence of such danger, the necessity, as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances." French v. State, 273 Ind. 251, 254, 403 N.E.2d 821, 824 (1980) (quoting Martin v. State, 260 Ind. 490, 296 N.E.2d 793 (1973)). Focusing on the "standpoint of the defendant" means at least two

10

things: (1) the trier of fact must consider the circumstances as they appeared to the defendant, rather than to the victim or anyone else; and (2) the defendant's own account, although not required to be believed, is critically relevant testimony. As one early case put it:

> [W]hoever relies upon appearances, and a reasonable determination upon such appearances, as a defence in a case of homicide, ought to be allowed to prove every fact and circumstance *known to him*, and connected with the deceased, which was fairly calculated to create an apprehension for his own safety. Any narrower rule than this would, we think, prove inadequate to full justice in all cases of homicide, and would in many cases, operate as a serious abridgement of the law of self-defence.

Boyle v. State, 97 Ind. 322, 326 (1884) (emphasis added).

Id. at 42, n.10. Indiana Pattern Jury Instruction 10.03A provides no less of an expression of that rule, and thus the instruction given in the present case by the trial court was a correct statement of the law.

### III. Washington's Additional Instructions

Here Washington, by way of his two additional instructions, essentially alleges that he can successfully claim defense of another even if he was mistaken about Brown not holding his son when Officer Young attempts to restrain her. This is an incorrect (or at least misleadingly incomplete) statement of the law because, as we pointed out in French, that must be balanced against whether or not Washington was "act[ing] honestly," or stated another way, as a reasonable defendant. French, 273 Ind. at 256, 403 N.E.2d at 825.

Washington's tendered instruction no. 3 would have been superfluous because it contained language similar to the pattern jury instruction that was tendered. Therefore it was properly refused.

And Washington's tendered instruction no. 4 focused solely on his perception of the danger he faced and thus did not constitute a correct statement of the law because it did not include anything about the reasonableness of his perception and belief as to the danger. It was therefore also properly refused.

11

## Conclusion

We affirm the decision of the trial court. Here, the instruction given by the court was a correct statement of law and Washington's tendered instructions were not required. The trial court did not abuse its discretion in refusing to give them. We hold that the Indiana Pattern Jury Instruction is a correct statement of the law and continues to serve as the primary guide for our trial judges on this issue. It contains language which compliments the self-defense or defense of another statute regarding the factors as they existed in the mind of the defendant balanced against whether such belief was reasonable. Trial courts continue to have the discretion to augment the pattern instructions whenever they deem appropriate and to refuse any tendered instructions consistent with the requirements of <u>Walden</u>. Their decisions will be reviewed for an abuse of discretion.

However, we remand the case to the trial court to correct the abstract of judgment, as conceded by the State and held by the Court of Appeals. Specifically, there was a clerical error on the abstract of judgment. It states that Washington was convicted of Class D felony resisting law enforcement. The actual judgment of conviction states that Washington was convicted of Class A misdemeanor resisting law enforcement. Therefore, upon remand, the trial court should enter a corrected abstract of judgment accurately reflecting that Washington was convicted of Class A misdemeanor resisting law enforcement.

Dickson, C.J., Rucker, Massa, and Rush, JJ., concur.