**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 12 2014, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KANEKA S. KIDD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  45A04-1308-CR-398 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-0911-MR-10

**March 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Kaneka S. Kidd was convicted of Murder,[1] a felony, and claims on appeal that the trial court erred in refusing to give her proffered instruction on self-defense. In lieu of that instruction, the trial court gave two other instructions.

The instructions that the trial court gave were based on the Indiana Pattern Jury Instructions that the Indiana Supreme Court has expressly approved and tracked the language of our self-defense statute. There is no showing that the trial court's refusal to give Kidd's tendered jury instruction had a substantial impact on the jury's decision. As a result, we agree that the trial court properly refused to give Kidd's tendered instruction and affirm her conviction and sentence.

## FACTS

Kidd and Jermaine Ellis were sporadically involved in a romantic relationship since Kidd was thirteen or fourteen years old and Ellis was eighteen or nineteen. Although they had not been intimate for almost two years prior to 2009, Ellis and Kidd previously had children together. Ellis lived with Kidd at her grandmother's house. Kidd stated that Ellis had physically and emotionally abused her many times, and she may have suffered from post-traumatic stress disorder (PTSD) from the history of family and domestic abuse that was inflicted upon her at a young age. Ellis hit, battered, and committed acts of violence against Kidd for almost seventeen years.

---

[1] Ind. Code § 35-42-1-1.

2

On November 28, 2009, Kidd ordered a pizza for Ellis but there was a mistake with the order. Ellis was angry and complained to Kidd about it. Kidd then called the restaurant and drove back to pick up the correct pizza.

Both Kidd and Ellis had been invited to a friend's birthday party that same evening. Kidd left for the party by herself around 10:30 p.m., and Ellis arrived at approximately 12:30 a.m. Ellis still appeared angry, and Kidd felt like she could not have fun with Ellis at the party.

At some point, Kidd told Ellis that she was not scared of him. Ellis later allegedly insulted Kidd at the party, telling her that she was dancing like a "slut" and that he should treat her like a "slut." Tr. p. 330-31. Both Ellis and Kidd had been drinking alcohol at the party. Kidd eventually went to the bathroom and called her brother. She told him that Ellis was threatening to hit her while they were at the party. Kidd's brother told her to leave and return home.

At some point, Ellis walked upstairs to the bathroom and told Kidd that he was ready to leave. The hostess of the party walked them to the door. She did not observe them fighting or notice any tension between Ellis and Kidd, but she did notice that Kidd looked sad. She also was not concerned that Ellis and Kidd were leaving together.

At approximately 3:00 a.m., Ellis and Kidd walked out to her vehicle. Kidd started to unlock the driver's side door, but Ellis grabbed the door from her and struck Kidd in the head. Ellis got into the driver's seat and Kidd walked to the passenger side. When Kidd opened the door, Ellis told her to hurry and grabbed for Kidd's purse. At

3

some point, Ellis told Kidd that he was glad her son, who had died in a tragic accident, was dead, and that he had deserved to die.

Kidd always carried a .9mm semi-automatic handgun in her purse for protection. She had her hand on the pistol as Ellis reached across the console. Kidd told Ellis that she had a gun, but Ellis stated that he did not care. Kidd's purse fell in the car, and Kidd pulled out her gun and switched off the safety. Ellis told Kidd that he wished she would shoot him and again tried to grab Kidd across the console with his left hand from the driver's seat. Kidd was still standing outside the vehicle, and as Ellis tried to reach across the car, Kidd shot him ten times. Kidd later admitted that she closed her eyes and shot until the gun was out of bullets. Kidd was struck in the forearm, torso, and legs. Kidd later told police that Ellis said to Kidd, "I thought you loved me." State's Ex. 66. Ellis died in the vehicle. A neighbor heard Kidd say at the time of the shooting, "Now how do you like that?" Tr. p. 198-99. Kidd sat on top of Ellis's body in the driver's seat and started to drive home. Although Kidd passed several police officers and a police station on her way to her house, she did not stop. Kidd also made twelve phone calls from the time of the shooting until she got home to friends and family members.

On November 30, 2009, Kidd was charged with murder. At Kidd's jury trial that commenced on April 2, 2013, Dr. Stephanie Calloway, a forensic psychologist, testified that he had examined Kidd and opined that Kidd suffered from PTSD. Dr. Calloway also testified that Kidd had developed hypervigilence that gave her a heightened sense of

4

awareness to cues that Ellis was about to become violent. The events prior to the shooting made Kidd aware that Ellis was going to assault her. Id.

Following the presentation of evidence on April 5, 2013, Kidd tendered a proposed final jury instruction regarding the law of self-defense. Over Kidd's objection, the trial court refused to give her proffered instruction that provided:

DEFENDANT'S TENDERED JURY INSTRUCTION NO. 3

The Court further instructs you that one person may kill another under such circumstances that the homicide or killing constitutes no crime, but is justified by the law. This is known as the law or doctrine of self-defense and may be, and is thus stated for your guidance.

Whoever, being himself without fault and in a place where he has a right to be, so far as his assailant is concerned, is assaulted, he may, without retreating, repel force by force; and he need not believe that his safety requires him to kill his adversary in order to give him a right to make use of force for that purpose. When from the act of his assailant, he believes, and has a reasonable ground to believe, that he is in danger of losing his life or receiving great bodily harm from his adversary the right to defend himself from such danger or apprehended danger may be exercised by him; and he may use it to any extent which is reasonably necessary, and, if his assailant is killed as a result of the reasonable defense of himself, he is excusable in the eyes of the law. The question of the existence of such danger, the necessity or apparent necessity, as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the existing circumstances. Ordinarily one exercising the right to self-defense is required to act upon the instant and without time to deliberate and investigate and under such circumstances a danger which exists only in appearance, is as real as imminent to him as it if were actual.

A person in the exercise of the right of self-defense must act honestly and conscientiously.

When all danger and all apparent danger of the loss of life, or of receiving great bodily harm, from the assault of his assailant is at an end and passed, then the right to use force is at an end and should cease. The person exercising the right of self-

5

defense must honestly believe, and have reasonable ground to believe, when he makes use of force to protect himself from an assailant, that at the time he uses the force it is then necessary to do so to protect his life, or to protect his person from great bodily harm.

One who in no apparent danger, and who apprehends no danger and who has no reasonable ground for such apprehension cannot kill another and successfully interpose the defense of self-defense.

Appellant's App. p. 116.

Upon refusing Kidd's proposed instruction, the trial court gave the following two instructions based on the Indiana Pattern Jury Instructions of self-defense. Id. at 391. In particular, these instructions provided that:

INSTRUCTION NO. 3

It is an issue whether the defendant acted in self-defense. A person may use reasonable force against another person to protect herself from what the defendant reasonably believes to be the imminent use of unlawful force. A person is justified in using deadly force, and does not have a duty to retreat, only if she reasonably believes that deadly force is necessary to prevent serious bodily injury to herself. The State has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.

Appellant's App. p. 130.

INSTRUCTION NO. 4

SELF-DEFENSE: The killing of another human being may be justified on the theory of self-defense if the perpetrator:

1) acted without fault;
2) was in a place where she had a right to be;
3) was in real danger of great bodily harm or in such apparent danger as to cause her in good faith to fear death or great bodily harm.

The danger of death or great bodily harm need not be actual. It need be only apparent to a reasonable person under the circumstances. The law protects persons who feel compelled to act as such times, even though in retrospect it is

6

proven they have erred, if they acted reasonably, in view of the surrounding circumstances under which the events took place. The law of self-defense does not, however, protect one who kills another human being through anger or revenge in an encounter provoked and brought on by herself.

If you believe from the evidence in this case that the defendant killed the decedent in self-defense or if you have a reasonable doubt as to whether or not the defendant killed the decedent in self-defense, then she cannot be found guilty of any offense.

Id. at 131.

Thereafter, Kidd was found guilty as charged and was subsequently sentenced to forty-five years of incarceration. Kidd now appeals.

DISCUSSION AND DECISION

I. Standard of Review

The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jurors and to enable them to comprehend the case clearly and arrive at a just, fair, and correct verdict. Munford v. State, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010).

The standard of review of a challenge to the trial court's decision to give or refuse an instruction requires us to consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which were given. Springer v. State, 798 N.E.2d 431, 433 (Ind. 2003).

The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. Id. To constitute an abuse of discretion

7

the instructions given must be erroneous and the instructions taken as a whole must misstate the law or otherwise mislead the jury. Munford, 923 N.E. 2d at 11.

## II. Kidd's Claims

As noted above, Kidd claims that the trial court erred refusing to give her proffered final instruction on self-defense. As a result, Kidd maintains that the "failure to fully instruct the jury as to the correct and complete law of self-defense deprived her of a fair trial." Appellant's Br. p. 10. Kidd notes that our Supreme Court reversed the defendant's conviction in French v. State, 403 N.E.2d 821 (Ind. 1980), because the trial court failed to give the same instruction that Kidd now offers. Kidd contends that like the circumstances in French, the trial court's instructions that were given "failed to inform the jury that the existence of the danger and the amount of force required to resist the attack must be determined only from the defendant's standpoint." Appellant's Br. p. 10.

One of the essential questions in this case is whether the trial court's use of Indiana's Pattern Jury Instructions on self-defense that also tracked the language of the self-defense statute was sufficient to inform the jury about the law that is relevant to a self-defense claim.

Indiana Code section 35-41-3-2(c) provides in part that

A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:

(1) is justified in using deadly force; and

(2) does not have a duty to retreat;

8

if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

Kidd initially asserts that the pattern instructions did not adequately apprise the jury that the belief of danger and the amount of force necessary to resist attack must be determined from the defendant's standpoint. Notwithstanding this claim, it has been held that the phrase "reasonably believes," as set forth in the self-defense statute quoted above, requires both subjective belief that force was necessary to prevent serious bodily injury, and that such "actual belief" was one that a reasonable person would have under the circumstances. Littler v. State, 871 N.E.2d 276, 279 (Ind. 2007).

Because the final instructions that the trial court gave accurately conveyed both the subjective and objective standards for evaluating Kidd's actions, those instructions were properly covered in Kidd's proposed instructions. Thus, it is apparent that in the event that the trial court gave Kidd's instruction with regard to this issue, it would have been merely duplicative of what was already adequately presented to the jury in the State's instructions.

As noted above, the trial court's first instruction that was given was taken from Indiana's statutory language and the Indiana Pattern Jury Instruction on self-defense. Appellant's App. p. 130. The trial court then expanded upon this statement with Instruction Number four that covered the elements necessary to validly claim self-defense

9

and that the fear of bodily harm need only be reasonable under the circumstances, even if mistaken. Appellant's App. p. 131.

We also note that our Supreme Court has recently held that the Indiana Pattern Jury Instruction language was adequate, after analyzing the line of cases dealing with the language of jury instructions on self-defense including French v. State, Shaw v. State, and Littler. Washington v. State, 997 N.E.2d 342, 346-50 (Ind. 2013). The defendant tendered the following instruction, which largely paralleled the instruction that the trial court gave:

Defendant's Tendered Instruction No. 2

Use of force to defend another person is a legal defense.

A person is justified in using reasonable force against another person to protect a third person from what the person reasonably believes to be the imminent use of unlawful force.

No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting a third person by reasonable means necessary.

The State has the burden of disproving this defense beyond a reasonable doubt.

Id. at 344. However, Washington tendered two additional instructions, both of which the trial court refused. It was determined that while the defendant's own account is critically relevant, the standard is still the reasonableness of the defendant's belief. Id. at 349.

The Washington court concluded its overall analysis by stating that "Indiana Pattern Jury Instruction 10.03A provides no less of an expression of that rule, and thus the instruction given in the present case by the trial court was a correct statement of the

law." Id. at 350; see also Davis v. State, 691 N.E.2d 1285, 1289-90 (Ind. Ct. App. 1998) (observing that the language of pattern instructions covering defense of self, another and attack on dwelling and the use of deadly force was adequate because the jury was apprised through the statutory language that "reasonable belief" was from the defendant's perspective).

Additionally, the trial court's final instructions in this case that tracked directly Indiana Pattern Jury Instruction 10.03A and Indiana Code section 35-41-3-2, states that the standard for the amount of force as being "reasonable force against another person to protect herself." Appellant's App. p. 130. And as set forth above, it also provides that a person may use deadly force when she reasonably believes that it is necessary to prevent serious bodily injury to herself. Id.

As illustrated above, instruction number four that the trial court gave provides that the killing of another person may be justified by self-defense if the defendant acted without fault, was in a place where she had a right to be, and "was in real danger of great bodily harm or in such apparent danger as to cause her in good faith to fear death or great bodily harm." Id. at 131. This instruction made it clear that the danger need not be actual, but "[i]t need be only apparent to a reasonable person under the circumstances," even if his or her belief was in error. Id. Although the potential harm and amount of force necessary is determined from the subjective perspective of the defendant at the time and under the circumstances, the reasonableness standard also applies, which the final instruction that the trial court gave properly reflected.

11

It appears as though Kidd's argument regarding the deficiency of the instructions that the trial court gave simply revolves around the State's argument as to the number of times that Kidd shot Ellis. Appellant's Br. p. 10. However, from Kidd's perspective, there is a distinction between the amount of force necessary and the reasonableness of her actions under the circumstances.

A review of the hearing regarding the final instructions sheds light on the distinction even more. For instance, the State tendered, and the trial court rejected, a proposed jury instruction that read, "firing multiple shots undercuts a claim of self-defense." Appellant's App. p. 123. Although the trial court rejected that principle as an instruction, it commented that the State could argue it in rebuttal to the self-defense claim.

The central question—whether Kidd reasonably believed that the use of deadly force was necessary to prevent serious bodily harm—was ultimately for the jury to determine, and the jury was well-apprised of its duty to answer these questions from Kidd's perspective in light of the instructions that the trial court gave. Therefore, under either the State's instructions <u>or</u> Kidd's proposed instructions, the State would have been entitled to argue that shooting Ellis ten times from outside of the vehicle while he was inside the car undercut her claim of self-defense.

Indeed, the instructions as given clearly noted that deadly force may be used to repel force that imminently threatened seriously bodily injury or death. They also made it clear that Kidd would be protected even if in retrospect it was shown that she erred in

12

her judgment. Moreover, the jury was informed that they were to analyze the reasonableness of Kidd's actions from her vantage point.

Finally, in examining the facts that were presented, the issue of whether Kidd was in imminent danger of death or serious bodily injury is highly disputable. As discussed above, Ellis was unarmed, and he was reaching for Kidd with his left hand over the inside console from inside the vehicle while Kidd was standing outside the car. Although Kidd stated that Ellis displayed a history of violence toward her, Kidd made conflicting statements to police that Ellis had not touched her for four years prior to this incident. Tr. p. 356, 358-59. The police were not able to locate any call or report regarding Ellis's violence toward Kidd, even though Kidd told the police that there was at least one such incident.

Kidd also told one of the transporting officers that Ellis said he thought her young son, who died in an accident, deserved to die. Tr. p. 207-08. Although Kidd later denied making this statement, she did admit that such a statement would make her furious. Id. at 270-01. Kidd's anger also appears to be reflected in the statements heard by a neighbor at the time of the shooting where Kidd stated that she was sick of Ellis "messing around," and made the statement after shooting Ellis, "Now how do you like that?" Id. at 198-99.

As discussed above, Kidd shot Ellis ten times until she had exhausted all of the bullets in her semi-automatic handgun. Id. at 81-82, 129, 155, 226-30. As Ellis died in the car, Kidd sat on top of his body in the driver's seat and started to drive home. The evidence also established that Kidd passed three police officers and a police station on

13

her way to the house, but she did not stop. State's Ex. 66. Instead, Kidd made twelve phone calls from the time of the shooting until she got home to friends and family members. Id. at 265, 272-73. It was only after Kidd arrived home and reloaded her gun that she called 911. State's Ex. 66.

In light of the above, the jury could reasonably conclude that the evidence failed to show that Kidd reasonably believed that she was compelled to use deadly force to prevent imminent and serious bodily injury or death. In fact, Kidd's statements indicate that she was angry with Ellis and wanted him to "leave her alone." State's Ex. 66. Kidd also had told Ellis that night that she was not scared of him. Tr. p. 359.

In sum, the instructions that the trial court gave were based on Indiana Pattern Jury Instructions that have been approved by our Supreme Court. Given the evidence produced at trial, we cannot say that the refusal to give Kidd's proffered jury instruction on self-defense had a substantial impact on the jury's decision. As a result of the instructions that the trial court gave, the jury was made aware of the correct standard of law, and it reasonably concluded that Kidd did not act in self-defense when she murdered Ellis. Therefore, the trial court did not err in refusing to give Kidd's tendered instruction.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.

14