## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2015, 10:06 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Ellen F. Hurley<br>Marion County Public Defender Agency<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Brian Reitz<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Tibbs,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | April 30, 2015<br><br>Court of Appeals Cause No.<br>49A02-1409-CR-675<br><br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa Borges, Judge<br><br>Cause No. 49G04-1305-MR-30563 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Robert Tibbs was convicted of murder, a felony, and carrying a handgun without license, a Class A misdemeanor. Tibbs raises two

issues on appeal: (1) whether there was sufficient evidence to support his conviction of murder; and (2) whether the trial court abused its discretion by instructing the jury on accomplice liability. Concluding the State presented sufficient evidence and that the trial court did not abuse its discretion, we affirm.

## Facts and Procedural History

On May 6, 2013, Tyron Woods was spending the day at an apartment with his girlfriend, Leeasha Taylor, and Nickia Walker. That day, Woods had a conversation with Rayshawn Turnstill outside of the apartment. After the conversation, Turnstill left, but he returned approximately a half-hour later with Tibbs and David Burnett. The three men approached Woods, and Tibbs told Woods that Turnstill "wants to bump," which meant that Turnstill wished to fight Woods. Transcript at 85. Woods agreed to fight.

Woods was carrying a firearm and handed it to Taylor. Tibbs and Burnett stood nearby and urged Turnstill to start the fight. Meanwhile, Taylor remained close by, holding Woods's gun behind her back. Tibbs told Taylor to put the gun down, but she refused, believing that Tibbs, Burnett, or Turnstill might pick it up. When Taylor refused to relinquish the gun, Tibbs pulled out his own handgun and pointed it at Taylor's head. Woods smacked the gun away from Taylor's face, and Woods and Tibbs began fighting. While Tibbs and Woods tussled, Burnett came up behind Taylor and grabbed Woods's gun away from her. He pointed the gun at Woods, and Woods ran toward the

apartment. Burnett shot Woods in the back, but Woods was still able to make it inside the apartment. Taylor followed Woods inside. As Taylor entered the apartment, she saw Burnett standing at the front porch and Tibbs standing at a side window—both men were pointing their firearms into the apartment. After Taylor entered the apartment behind Woods, she heard "maybe five" additional gunshots, tr. at 129, which were fired by both Burnett and Tibbs.

[4] Indianapolis Metropolitan Police Department Officer Dewey Runnels was patrolling in the area, heard the gunshots, and quickly arrived on scene. He entered the apartment and found Woods and Taylor inside. Officer Runnels requested medical assistance for Woods, but Woods died approximately thirty minutes later as a result of his gunshot wound.

[5] Several witnesses outside the apartment identified Tibbs and Burnett as suspects. Officers examined the scene and discovered five bullet holes, two shell casings outside, and three spent bullets inside. The side window at which Tibbs had stood was broken and a possible bullet hole was found in the blinds. A forensic scientist for the Marion County Crime Lab determined that two different guns fired two sets of bullets found at the crime scene. No guns were ever recovered and linked to the bullets or shell casings found at the scene.

[6] On May 9, 2013, the State charged Tibbs with murder, a felony, and carrying a handgun without license, a Class A misdemeanor. A two-day jury trial commenced on July 2, 2014, at the end of which the jury found Tibbs guilty as

charged.[1]  The trial court sentenced Tibbs to an aggregate term of sixty years imprisonment.  This appeal followed.

# Discussion and Decision

## I.  Sufficiency of Evidence

[7]  Tibbs claims there was not sufficient evidence to prove he committed the crime of murder, either as the principal actor or as Burnett's accomplice.  When reviewing a defendant's claim of insufficient evidence, we will neither reweigh the evidence nor judge the credibility of the witnesses, and we must respect "the jury's exclusive province to weigh conflicting evidence."  *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005) (citation omitted).  We consider only the probative evidence and reasonable inferences supporting the verdict.  *Id.*  A conviction will be affirmed "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt."  *Id.* (citation omitted).

[8]  In Indiana, there is no distinction between the criminal liability of a principal and an accomplice "who knowingly or intentionally aids, induces, or causes another person to commit an offense . . . ."  *See Wise v. State*, 719 N.E.2d 1192, 1198 (Ind. 1999) (quoting Ind. Code § 35-41-2-4).  Factors used to determine

---

[1]  Tibbs and Burnett where tried as codefendants, and Burnett was also found guilty of murder and carrying a handgun without a license.

whether a person aided another in commission of a crime include "(1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime." *Garland v. State*, 788 N.E.2d 425, 431 (Ind. 2003).

[9] Here, the evidence is sufficient for a reasonable jury to conclude Tibbs acted as Burnett's accomplice in murdering Woods. Armed with a handgun for which he did not own a license, Tibbs rode with Burnett to confront Woods. Once there, Tibbs encouraged his friend to fight with Woods. Unprovoked by any act of violence by Taylor, Tibbs drew his sidearm and pointed it at Taylor's head. Tibbs then fought with Woods while Burnett wrestled Woods's gun away from Taylor. When Burnett shot at Woods, Tibbs did not run away or attempt to stop Burnett; rather, he went to the apartment window and fired two bullets inside the apartment in which Woods attempted to hide. Tibbs then fled the scene—presumably with Burnett—before police arrived only moments later.

[10] Tibbs suggests that he cannot be found guilty under an accomplice liability theory because there is no evidence that he "shared a common design or purpose with Burnett to shoot Woods" and that Tibbs's stated purpose for being at the apartment was for a fistfight. Brief of Appellant at 8. However, to find a defendant guilty under an accomplice liability theory, "a preconceived plan need not be proved: concerted action or participation in illegal acts is sufficient." *Johnson v. State*, 490 N.E.2d 333, 334 (Ind. 1986).

[11] Tibbs also questions Taylor's trial testimony that she saw Tibbs fire his gun through the apartment window, noting that statements she made to a detective prior to trial were more equivocal. Any issues as to the credibility of Taylor's testimony were for the jury to evaluate, not this court. *McHenry*, 820 N.E.2d at 126. Moreover, even if Taylor only saw Tibbs standing at the window but did not actually see him fire his gun, circumstantial evidence and common sense could have easily led the jury to conclude Tibbs fired two bullets through the window and into the apartment where Woods had just retreated.[2]

[12] Viewing the evidence in the light most favorable to the judgment, we conclude there was sufficient evidence for the jury to find Tibbs was guilty of murder as an accomplice.

## II. Accomplice Liability Instruction

[13] Second, Tibbs argues the trial court erred by instructing the jury on accomplice liability. Instruction of the jury is within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013). Whether a given jury instruction was an abuse of discretion depends upon three considerations: (1) whether the instruction was a correct statement of the law; (2) whether there was evidence in the record to

---

[2] Although Tibbs only attacks Taylor's testimony on appeal, Walker—also an eyewitness—testified that she saw Tibbs fire his gun at the apartment. *See* Tr. at 81.

support giving the instruction; and (3) whether the substance was covered by other instructions given. *Id.* at 345-46.

[14] Tibbs argues only that the evidence at trial did not support giving an instruction on accomplice liability. Thus, his argument on this issue is practically no different from his claim that there was insufficient evidence to find him guilty of murder. For the reasons discussed above, we conclude there was evidence in the record to support an accomplice liability instruction, and the trial court did not abuse its discretion.

# Conclusion

[15] Concluding there was sufficient evidence for the jury to find Tibbs guilty of murder and that the trial court did not abuse its discretion by giving a jury instruction on accomplice liability, we affirm.

[16] Affirmed.


May, J., and Mathias, J., concur.