## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2017, 6:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ruth Ann Johnson
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

Frederick Vaiana
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ron C. Stewart,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 9, 2017<br><br>Court of Appeals Case No.<br>49A02-1604-CR-740<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt Eisgruber, Judge<br><br>Trial Court Cause No.<br>49G01-1505-F2-15772 |

**May, Judge.**

[1] Ron C. Stewart appeals his conviction of Level 2 felony voluntary manslaughter,[1] a lesser included offense of murder. Stewart raises two issues on appeal:

> 1. Whether the State presented sufficient evidence to disprove Stewart's claim of self-defense; and

> 2. Whether the trial court erred in instructing the jury on self-defense.

[2] We affirm.

# Facts and Procedural History

[3] On May 3, 2015, Nicholas Norris and his girlfriend, Amanda Patton, were riding his motorcycle in Indianapolis. They were riding alongside another motorcycle carrying two friends, Ryan and Rachel Harrison. Both motorcycles were cut off by a Dodge Durango driven by Stewart. The motorcycles pulled up beside the Durango at the next red light, and Norris began to yell at Stewart about cutting them off. Stewart held up a handgun and said, "You just need to keep goin [sic]." (Tr. Vol. II at 382.) When the light turned green, Stewart quickly sped away from the motorcycles and then pulled into a nearby pawn shop parking lot. Norris and Harrison followed the Durango into the parking lot and positioned their motorcycles a couple feet in front of the Durango near

---

[1] Ind. Code § 35-42-1-3 (2014).

the parking lot exit. Stewart then backed away from the motorcycles, but Norris rode his motorcycle forward and stopped near the front passenger side door of the Durango. As Stewart tried to drive around Norris' motorcycle, Norris hit the Durango with a "monkey ball," described at trial as "a self defense [sic] weapon."[2] (Tr. Vol. I at 126.)

[4] Stewart then drove the Durango toward the parking lot exit and stopped about "ten car lengths" from Norris' motorcycle. (*Id*. at 56.). Norris was still on his motorcycle, but Patton was not. Stewart exited his Durango, walked to the back of the vehicle, and fired his weapon six times in the direction of the motorcyclists. Norris fell to the ground after being shot in his left shoulder and the back of his head. After firing the shots, Stewart got back into the Durango and drove away. Norris died during the ambulance ride to the hospital.

[5] Stewart drove to his mother's house to tell her about the incident. His mother lived with Yeozenith Eaton. Eaton testified that when Stewart was telling him about the shooting, Stewart said "he was defending hisself [sic] and his vehicle," (*id*. at 100), and that he "fired until the guy went down." (*Id*. at 102.) Eaton encouraged Stewart to turn himself in to police, and when Stewart refused, Eaton told him to get away from the house.

---

[2]Ryan Harrison described the item as a key chain with a rubber ball that is "basically a safety measure . . . somethin [sic] to kind of alert the car that you're about to run us over." (Tr. Vol. I at 148-49.) Mark Wallace of the Marion County Forensic Services Agency described the "monkey ball" "as a lanyard with a ball at one end and a . . . silver metal attachment at the other end." (Tr. Vol. II at 264.)

[6]     Stewart eventually drove to a nearby hotel where he paid for a week-long stay. Eaton called police and informed them Stewart admitted shooting someone. Ryan Harrison, one of the motorcyclists at the scene, picked Stewart's photograph out of a six-person photograph array. Two days after the shooting, police found Stewart at his hotel and arrested him. Inside the hotel room, police found Stewart's wallet, keys, and cell phone. On Stewart's cell phone were searches for travel to Florida, extended stays at a hotel, and temporary housing in Florida. He searched for web articles about road rage, and, specifically, news stories related to him shooting Norris. Police also found multiple searches on Stewart's phone regarding the Wikipedia pages for the "duty to retreat," (*id.* at 212), and "stand your ground" laws. (*Id.*)

[7]     The State initially charged Stewart with Level 2 felony voluntary manslaughter, but later amended the charge to murder.[3] After a one-day jury trial, the jury found Stewart not guilty of murder, but guilty of the lesser included offense of voluntary manslaughter. The trial court imposed a fourteen-year sentence, with ten years executed in the Department of Correction, two years executed in community corrections, two years suspended, and one year of probation.

# Discussion and Decision

---

[3] Ind. Code § 35-42-1-1 (2014).

# Sufficiency of the Evidence

[8] Stewart does not dispute he shot and killed Norris. Instead, he argues the State presented insufficient evidence to disprove his claim of self-defense beyond a reasonable doubt.

[9] The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same standard used for any claim of insufficient evidence. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). We neither reweigh the evidence nor judge the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). A conviction will be affirmed if there is sufficient evidence of probative value to support the trier of fact's conclusion. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002).

[10] To prove Stewart committed Level 2 felony voluntary manslaughter, the State needed to present evidence Stewart: 1) knowingly or intentionally, 2) killed another human being, 3) while acting under sudden heat. *See* Ind. Code § 35-42-1-3 (2014). "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter." Ind. Code § 35-42-1-3(b) (2014).

[11] "A valid claim of self-defense is legal justification for an otherwise criminal act." *Wallace*, 725 N.E.2d at 840.

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person: (1) is justified in using deadly force;

and (2) does not have a duty to retreat; if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony.

Ind. Code § 35-41-3-2(c) (2013).

[12] To prove he acted in self-defense, the defendant must demonstrate that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Wilson*, 770 N.E.2d at 800; Ind. Code § 35-41-3-2 (2013). Force is not justified if the person asserting self-defense has "entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." Ind. Code § 35-41-3-2(g)(3). Before claiming self-defense, "a mutual combatant, whether or not the initial aggressor, must declare an armistice." *Wilson*, 770 N.E.2d at 801. "Where a person has used more force than is necessary to repel an attack the right to self-defense is extinguished, and the ultimate result is that the intended victim then becomes the perpetrator." *Geralds v. State*, 647 N.E.2d 369, 373 (Ind. Ct. App. 1995), *trans denied*.

[13] When a defendant meets his initial burden as to self-defense, "the State has the burden of negating at least one of the necessary elements." *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied.* "The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant

did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.* If a defendant is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated beyond a reasonable doubt. *Wilson,* 770 N.E.2d at 800-01.

[14] Stewart argues the State did not meet its burden of disproving his claim of self-defense because the State did not negate an essential element of self-defense. Specifically, Stewart contends that he acted without fault and only fired his weapon because he had a reasonable fear for his life. We disagree.

[15] It is undisputed that by being on the road and in a pawn shop parking lot, Stewart was in a place he had a right to be. Stewart states that he acted without fault, and he was forced to unwillingly participate in the fighting after repeated aggressive acts from Norris. Stewart further argues that he fired his weapon that day because he was in a state of reasonable fear for his safety, as he believed the motorcyclists to be members of a gang called "The Outlaws." (Tr. Vol. II at 379.) He stated at trial, "I felt like I was gonna [sic] lose my life – if it wasn't to them [sic] it was gonna [sic] be me." (*Id*. at 388.)

[16] However, Stewart testified that he never saw Norris or the other motorcyclists with a gun. The only weapon Stewart testified to seeing was an object Norris was swinging which "looked like a ball with two hooks hangin [sic] from it." (*Id*. at 380.) Stewart was near the exit of the pawn shop parking lot, and the motorcyclists were ten car lengths away dismounting from their bikes, when Stewart exited his Durango and shot at the motorcyclists. As Stewart had a

way to exit the situation without resorting to deadly force, he cannot demonstrate he had a reasonable fear of death or great bodily harm. *See Porter v. State*, 543 N.E.2d 390, 391 (Ind. 1989) (self-defense not available when "appellant had ample opportunity to retreat from the scene and obviate the necessity of inflicting wounds upon the victim"). Further, one of Stewart's shots struck Norris in the back of the head, indicating Norris was turned away from Stewart. *See Jordan v. State*, 656 N.E.2d 816, 817-18 (Ind. 1995) (defendant did not have a valid assertion of self-defense when defendant was the first to display a weapon and shot the victim in the back), *reh'g denied*.

[17] In addition, the evidence presented at trial revealed Stewart willingly entered into mutual combat with Norris by holding up his gun at the red light when Norris yelled at Stewart for cutting off the motorcycles. Thus, in order for Stewart to have a valid claim he shot Norris in self-defense, he would have had to withdraw from the mutual combat with Norris and communicate his withdrawal to Norris, and then Norris would have had to reengage in combat with Stewart before Stewart could be deemed to have acted in self-defense. The record shows that Stewart did not withdraw from the situation or if he did, he did not communicate his withdrawal to Norris. Further, if Stewart had withdrawn, Norris was sitting on his motorcycle and had not reengaged Stewart in combat. *See Sudberry v. State*, 982 N.E.2d 475, 481-82 (Ind. Ct. App. 2013) (sufficient evidence to rebut claim of self-defense where defendant was a mutual combatant, did not withdraw from the fight or communicate his intent to withdraw, and used more force than necessary to repel his attacker).

Stewart's argument that the State presented insufficient evidence to negate his self-defense claim is merely an invitation to reweigh the evidence and judge the credibility of witnesses, which we will not do. *See Wilson*, 770 N.E.2d at 801. As there was substantial evidence of probative value to support the jury's finding of guilt, we hold the evidence was sufficient. *See, e.g., id.* (holding evidence sufficient to rebut defendant's claim of self-defense where defendant was retaliating against initial aggressor and did not withdraw).

## Self-Defense Instruction

Next, Stewart argues the trial court abused its discretion in not instructing the jury with his proposed final instructions for his self-defense claim. "The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Murray v. State*, 798 N.E.2d 895, 899 (Ind. Ct. App. 2003). When reviewing jury instruction decisions for an abuse of discretion, we consider: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the instruction; and (3) whether the substance of the instruction is covered by other instructions given. *Hollowell v. State*, 707 N.E.2d 1014, 1023 (Ind. Ct. App. 1999). For a trial court to have abused its discretion, "the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Murray*, 798 N.E.2d at 900.

[20] Stewart does not dispute that the trial court's self-defense instruction correctly stated the law and was clearly supported by the evidence. However, Stewart contends the instruction given to the jury at trial "was incomplete in the sense that, while it accurately outlined the jury's duty in finding a self-defense claim, it failed to instruct how to arrive at its verdict if it made such a finding." (Appellant's Br. at 16). Stewart's proposed final jury instruction read as follows:

> It is an issue whether the Defendant acted in self-defense.
>
> A person may use reasonable force against another person to protect himself from what he reasonably believes to be the imminent use of unlawful force.
>
> A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself.
>
> The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.
>
> *If you find that the State has failed to prove beyond a reasonable doubt that the Defendant did not act in self-defense, you must find the Defendant NOT GUILTY of all charges.*

(App. Vol. II at 109) (emphasis added).

[21] The trial court instead issued the pattern instruction on self-defense, which read:

> It is an issue whether the Defendant acted in self-defense.

A person is justified in using reasonable force against another person to protect himself or a third person from what the person reasonably believes to be the imminent use of unlawful force.

However, a person is justified in using deadly force and does not have a duty to retreat, if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a felony.

A person may not use force if:

- He is committing a crime that is directly and immediately related to the confrontation;

- He is escaping after the commission of a crime that is directly and immediately connected to the confrontation;

- He provokes unlawful action by another person, with intent to cause bodily injury to the other person; or

- He enters into combat with another person or is the initial aggressor unless he withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

(*Id*. at 122.)

[22]    Essentially, Stewart's argument on appeal is that because the trial court's jury instruction did not inform the jury of its duty to find him not guilty in the event

the State did not negate Stewart's self-defense claim, that instruction stands apart from the other jury instructions and misled the jury. We disagree.

[23] The trial court used the Indiana Pattern Jury Instruction for self-defense, and the pattern instruction "tracks the language of the self-defense and defense of another statute." *Washington v. State*, 997 N.E.2d 342, 349 (Ind. 2013). The pattern instruction is also a correct statement of law. *Id.* at 350 ("the instruction given in the present case by the trial court was a correct statement of the law"). Accordingly, the trial court did not abuse its discretion when it declined to instruct the jury with the defendant's proposed final instruction because Indiana Pattern Jury Instruction 10.03A is a correct statement of law and properly instructed the jury on self-defense. *See id*. (trial court's use of the pattern instruction on self-defense instead of the defendant's proffered instructions was not an abuse of its discretion).

# Conclusion

[24] The State presented sufficient evidence to negate Stewart's claim of self-defense beyond a reasonable doubt. Furthermore, the trial court did not abuse its discretion when it instructed the jury regarding self-defense. Accordingly, we affirm.

[25] Affirmed.

Brown, J., and Pyle, J., concur.